## CHARLESTON.

HEFFLEBOWER *v.* DETRICK.

Submitted September 4, 1884.—Decided November 21, 1885.

1. A promissory note in the usual form, not specifying any place of payment, made to the plaintiff residing in this State, commencing: "Kabletown, January 23, 1871," by "R.," then residing, and engaged in business at Kabletown in this State, and by "D." whose place of residence at that time does not certainly appear, will in the absence of proof showing that it was executed elsewhere, be presumed to have been executed by "R." and "D." in this State. (p. 28.)

2. A promissory note purporting on the face thereof to have been made at a place within this State, not specifying any place where the same is payable, will in the absence of proof, that it was made or payable elsewhere, be presumed to have been made, and that the same is payable in this State. (p. 24.)

3. In an action of *assumpsit*, brought against "D" upon said note issues were joined upon special replications to his plea of the statute of limitations, alleging in substance that "D." before the plaintiff's action on the note accrued, had resided in this State, and that before said right of action accrued, he departed without the same, and thereafter continued to reside out of this State until the bringing of said action ; upon the trial of these issues, in the absence of proof that "D." executed the note elsewhere, it will be presumed that he executed the same in this State. (p. 24.)

4. If a person residing in another State, makes his note in this State, and thereafter departs from, and continues to reside out of this State, he will be considered as a person, "who before the action accrued resided in this State," and who by his departure from it, and his residence out of it, has obstructed the payee in the prosecution of his right of action on such note during such absence from this State, (p. 25.)

5. If "R." residing in this State, makes his note to "H." also residing in this State, and sends the same to "D." residing in another State to be there signed by him and returned to "R." to be by him delivered to "H." and the same is there so signed and returned to "R.," who delivered the same to "H.," such note is to be held, as a contract made in this State, and subject to, and governed by the laws thereof. (p. 24.)

6. The general rule is, that all instruments made and executed in a country, take effect and are to be construed as to their nature, operation and extent, according to the laws of the country where they are made and executed.   (p. 24.)

7. Under sec. 3 of ch. 130 of the Code, as amended by sec. 23 of ch. 160 of the Acts of 1882, neither a plaintiff, nor a person for whose use the suit is brought, is a competent witness against a defendant, who is the survivor of himself and a deceased party who with him, was a joint maker of the promissory note on which the action is brought, in regard to any personal transaction or communication, between either of them, and such deceased party. (p. 22.)

8. Where a party has in his possession or under his control, evidence, by the introduction of which at the trial he would be able to render certain, a fact material to his success, which is otherwise left in doubt, and he withholds such evidence, the court will upon a demurrer to the evidence introduced by his adversary, presume that the fact was against him.  (p. 23.)

9. A case wherein a party was held to have executed a promissory note in this State, and by departing therefrom and residing in another State had "obstructed the plaintiff's right" within the meaning of sec. 18 of ch. 104 of the Code, as amended by sec. 18, of ch. 102 of the Acts of 1882.

*G. Baylor* for plaintiff in error.

*White & Trapnell* for defendant in error.

WOODS, JUDGE :

This was an action of *assumpsit* brought in the circuit court of Jefferson county on April 26, 1882, by Daniel Hefflebower for the use of Henry Stouffer, against Louis F. Detrick and Anthony Nunemaker, surviving promisors of themselves and one David Reinhart to recover the amount of a promissory note of $1,000.00 made by them to the plaintiff on January 23, 1871, payable twelve months thereafter, with ten *per cent.* interest from date.   At the same time an order of attachment was sued out against the estate of Detrick which was levied upon one C. H. Kable, whom the plaintiff alleged to be indebted to Detrick who was summoned as garnishee. The sheriff returned upon the summons that both defendants were non-residents of the State.   At May rules, 1882, the action as to Nunemaker was abated; an order of publi-

cation taken against Detrick, and the plaintiff filed his declaration containing one special count alleging that the defendants and Reinhart on January 23, 1871, in said county to-wit, at Kabletown in said county made their certain note in writing, signed with their own proper hands, by which they jointly and severally promised to pay the plaintiff twelve months after the date thereof, the sum of $1,000.00 for value received with interest from date," and also the common counts for money lent, and upon an account stated; and two counts upon promises alleged to have been made by the defendants and Reinhart in April, 1880, at Weverton in the State of Maryland, concluding in the usual form. At the July term, 1882, Detrick appeared and pleaded "*non assumpsit,*" and "*non assumpsit* within ten years." To the first of these pleas the plaintiff replied generally; to the plea of the statute of limitations, the plaintiff filed seven special replications to all of which except the second, the defendant demurred, which demurrer as to the first, third and seventh was overruled, and as to the fourth, fifth and sixth was sustained. Issues were made on the first, second, third and seventh, which on March 3, 1884, were tried by a jury and the the defendant demurred to the plaintiff's evidence, in which the plaintiff joined, and thereupon the jury found for the plaintiff and assessed his damages at $1,235.00 subject to the judgment of the court upon the demurrer to the evidence, and on March 7, 1884, the court entered judgment upon the demurrer in favor of the defendant, to which judgment the plaintiff excepted and tendered his bill of exceptions setting forth all the evidence introduced at the trial.

To this judgment the plaintiff obtained a writ of error and *supersedeas.*

The plaintiff has assigned various grounds of error which may all be included under two general heads: *First,* in sustaining the defendant's demurrer to the plaintiff's fourth, fifth and sixth special replications; and *second,* in rendering judgment for the defendant on his demurrer to the evidence.

The first special replication substantially alleged, that the defendant (Detrick) who before the right of action in the declaration mentioned accrued to the plaintiff, resided

in this State, departed from and remained out of the same from January 1, 1872, to the commencement of this suit, and thereby obstructed the plaintiff in the prosecution of his right of action from bringing and maintaining his action against said defendant within the time limited by sec. 18, ch. 104, of the Code, as amended by sec. 18 of ch. 102 of the Acts of the Legislature of 1882.

The second replication is the same in substance as the first, that he was so obstructed by *all* of the defendants. As no evidence was offered in support of the third replication it need not be further noticed. The seventh replication in substance alleged that the defendant, Detrick, at the time of the delivery of the note sued on, falsely represented to the plaintiff, that he had signed and delivered it at Kabletown in the State of West Virginia, and that thereafter he continued to reside out of this State, from the time the right of action thereon accrued, until January 23, 1883, and the plaintiff relying on said representation, and upon the absence of the defendant from this State, was thereby defeated and obstructed from bringing his action on the note from January 23, 1872, until the bringing of this suit, &c. Replications "six" and "four" are in substance and effect identical with replications "three" and "seven" respectively, and the demurrer thereto ought to have been overruled, but as they presented no new issues, the plaintiff was not injured thereby, for although technically good, they were useless, and for that cause ought to have been rejected. The fifth replication alleged that Detrick signed the note in the city of Baltimore, and State of Maryland, and caused and procured it to be delivered to the plaintiff as made by him at Kabletown in West Virginia, and there, and thereafter, said defendant remained and continued out of this State, and in the State of Maryland from the time the cause of action accrued, until the bringing of this suit, and thereby defeated and obstructed the plaintiff's right of action on said note from January 23, 1875, until the bringing of this suit, &c.

The only substantial difference between this and the "seventh" replication which was properly held good on demurrer, is that it avers that the note was made in the city of Baltimore in Maryland. We can perceive no good rea-

son why the demurrer thereto should have been sustained; but as the plaintiff was entitled to prove this fact under his "seventh" replication he has not been injured thereby.

The only evidence introduced at the trial was offered by the plaintiff, which consisted of the note described in the declaration, with seven receipts for interest endorsed thereon, the first two signed by the plaintiff, and the others by Henry Stouffer, for whose use the suit is brought, the last of which is for the interest up to April, 1880; and the testimony of the plaintiff, and of said Stouffer, and of one Kable, who was in no wise interested in the controversy, and a letter in the hand-writing of said David Reinhart. The plaintiff testified that the note was delivered to him by David Reinhart, at Ripon, in the county of Jefferson in West Virginia, where the plaintiff then resided; that Reinhart then resided in Kabletown in that county; that witness received two years' interest on the note, of $60.00 a year, paid annually; that the note then went into the possession of his sister, Jane Stouffer, and that he did not know when Reinhart, or when Nunemaker left this State, nor did he know of his own knowledge of Detrick, who was Reinhart's nephew, being here when the note was executed. Stouffer testified that he had a conversation with Detrick in Baltimore, May 18, 1882, when he served him with a copy of process in this case, in which he said he had no recollection of signing that note; that the last payment of interest endorsed thereon in April, 1880, was made to witness at Weverton, in Maryland, by Reinhart, where he was then living, and that at that time Detrick lived in Baltimore, Maryland. Kable testified that he lives in Kabletown, that Detrick in 1883, at the Carter House in *this town,* told him that when he saw Stouffer in Baltimore, he had lost sight of the note, but that after refreshing his memory he remembered signing it; that witness knew of Detrick being in the county before 1870, but don't know of his being in the county in 1871. He might have been at Duffield's in this county. He is Reinhart's nephew; lives in Baltimore. He thought he lived there in 1870 and that he has lived there ever since. Reinhart was in business at Kabletown from 1870 to 1875; his family lived at Duffield in this county from 1870 to

1875. So much of the letter as has any relevancy to this controversy is in these words :

"DUFFIELDS, January 23, 1871.

"Dear *Nephu :*—Inclosed I send my note in favor of Daniel Hefflebower which you *be please* to sign and return to me by Wednesday mail to Kabletown. Don't forget to direct to Kabletown. Hope you *received* this tomorrow in time to attend to it. The ten per cent I dont like. I am to have the money 3 years with less interest if the rate is lowered, which it is thought will be reduced by our legislature. * *

"Your *Unkle,*

"DAVID REINHART."

It was further proved by the plaintiff, as a witness in his own behalf, that this letter was filed by Detrick with his deposition in this case, and was in the hand writing of Reinhart.

The main questions presented for our consideration are, whether the note sued on, was made by the defendant in this State to be paid here; or in the State of Maryland to be paid there ? If the note was made in this State to be paid here, there is no doubt that the defendant's plea of the statute of limitations is a bar, to a recovery in this action, unless the plaintiff can bring himself within some of the exceptions in the statute. This he has attempted to do in his first, second, third and seventh replications. As the defendant introduced no evidence, the effect of his demurrer to evidence is to allow full credit to all the competent evidence of the plaintiff, and to admit all the facts directly proved by, or that a jury might fairly infer from it. In drawing these inferences as to what the evidence, whether direct or circumstantial and presumptive tends to prove, it is incumbent on the Court to adopt those most favorable to the demurree provided they be not forced, strained or manifestly repugnant to reason. *Hansbrough's Ex'ors* v. *Thorn*, 3 Leigh 147; *Whittington, &c.* v. *Christian*, 2 Rand. 353; *Miller, use, &c.* v. *Ins. Company*, 8 W. Va. 515; *Ware* v. *Stephenson*, 10 Leigh 164; *Trout* v. *Tenn. R. R. Co.*, 23 Gratt. 619. But if it appears from the demurrer, that incompetent evidence has been received and considered by the court, although not objected to in the trial-court, the demurrant may successfully object to such

incompetent evidence in the Appellate Court. *Rose* v. *Brown,* 11 W. Va. 122.    The defendant in error insists in argument that, the testimony of the plaintiff as a party, and of Henry Stouffer, as one interested in the event of this suit, is incompetent to prove any facts to which they testify, as against the defendant.    By sec. 23 of ch. 130 of the Code, as amended by sec. 23 of ch. 160 of the Acts of the Legislature 1882, it is, among other things enacted, that "No party to any action, * * * * * nor any person interested in the event thereof * * * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the time of such examination, deceased, * * * * * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person * * * * * ."

Under this section it is apparent that the plaintiff Hefflebower was incompetent to testify as to any personal transaction between himself and Reinhart who was dead, at the time the plaintiff was examined, as against either Detrick or Nunemaker who were survivors of said Reinhart, who with them had executed the note in controversy; and Henry Stouffer for whose use the action was brought, being interested in the event thereof, was also incompetent to testify as to any personal transaction or communication between himself and Reinhart, then dead, as against the survivors or either of them, and therefore so much of the testimony given by Hefflebower and Stouffer as details any personal transaction or communication between either of them and Reinhart during his lifetime, must be disregarded in considering this demurrer to evidence.    But as the policy of the law now is, to exclude no person as a witness either on his own, or on behalf of another, upon the ground that he is a party to the controversy or is interested in the event thereof, saving only the cases excepted in the statute, it follows, that a party to the controversy, or a person interested in the event thereof, may be examined as a witness as to any other facts within his knowledge, in the same manner and subject to the same rules of examination as any other witness.    Applying these rules to the testimony of Hefflebower and Stouffer appearing in the demurrer we must exclude from that of the former,

his statements that the "note was delivered to him by David Reinhart at Ripon in Jefferson county, W. Va.," and that "he received two years interest on the note of $60.00 per annum paid annually." The testimony given by this witness (the plaintiff) that the letter of Reinhart dated "Duffields, January 23, 1871," was in the hand writing of Reinhart is not open to this objection, for it was not in regard to a personal transaction or communication between him and Reinhart, but was such a fact otherwise learned as probably could have been proved by scores of persons with whom he transacted business at Kabletown from 1870 to 1875. From the testimony given by Stouffer we can only exclude the statement, that the last payment of interest in April, 1880, endorsed on the note was made by Reinhart at Weverton, Maryland. Are the facts remaining in proof, with those which a jury might fairly infer therefrom, sufficient to bring the plaintiff within the exceptions of the statute of limitations?

It is contended in argument for the defendant in error, that when Detrick made the note he was not a resident of this State within the meaning of the statute whose subsequent removal from, or remaining out of the State, obstructed the plaintiff in the prosecution of his right and that the plaintiff's evidence is insufficient to show that Detrick was even temporarily in this State at the time the contract was made. The first reflection that strikes the mind in the examination of this case, is that as the defendant on February 22, 1883, filed his plea of the statute of limitations, and the plaintiff on the same day filed his first and second special replications thereto on which the defendant then took issue, he neither by his plea of the statute of limitations, nor in either of the conversations with Stouffer in 1882, or with Kable in 1883 alleged or claimed that he had not made said contract in Kabletown in this State; and that if it was true that it was not in fact made in this State to be performed here, or that he was not in fact in this State when it was made he had the evidence within himself, and he was a competent witness to prove it, and having failed to remove this doubt, it is to be presumed that he could not truthfully do so; and according to well settled principles the Court upon a demurrer to evidence will resolve this presumption against him.

A brief review of some of the authorities will aid us in reaching sound conclusions on these questions.

The general rule is that all the instruments made and executed in a country, take effect and are to be construed, as to their nature, operation and extent, according to the laws of the country where they are made and executed. But where the contract is either expressly or tacitly to be performed in any other place than where the same was made and executed, the general rule is in conformity to the presumed intention of the parties, that the contract as to its validity, nature, obligation and interpretation is to be governed by the law of the place of performance. Story's Conflict of L. §§ 280, 286.

And in relation to contracts arising out of negotiable notes and bills in which the greatest strictness is required as to the time and place of presentment, demand a notice of protest for non-payment or acceptance, the place of the date of the note or bill is *prima facie* evidence that it is the place of the maker's residence and place of business. Daniels on Nego. Inst. § 640. In *Myer* v. *Helscher*, 47 N. Y. 270, it was held that where a note is dated at a place and payable generally, it must be presented and payment thereof demanded at the place of business of the maker in that place if he has one, and if he has no place of business therein, then at his place of residence; and if he has neither place of business nor residence, then if the holder of the note is at the place where it is in general made payable on the day of payment with the note ready to receive payment, it is sufficient to constitute a presentment and demand. In *Smith* v. *Phelbrick*, 10 Gray 252, a note was made and dated at Boston, the maker being then there on a visit for a temporary purpose only, but who at that time and ever since resided at Port Lavaca in Texas where he had his only place of business, it was held that in the absence of evidence to the contrary the presumption was that the residence of the promiser is at the place where the paper to which he subscribes his name is dated. In *Miller* v. *Wilson*, 88 Pa. St. 118, Wilson a resident of Kansas wishing to borrow money from Miller a resident of Pennsylvania, executed in Kansas his bond and mortgage and sent the same by mail to his

broker in Pennsylvania who negotiated the loan, and who as the agent of Wilson and Miller delivered the deed and secured the money, it was held by the supreme court of Pennsylvania that this was a Pennsylvania contract, on which only six *per cent.* interest the legal rate in that State could be recovered instead of seven *per cent.* which was the legal rate of interest in Kansas.

In *Tilden* v. *Blair*, 21 Wall. 241 it was held by the Supreme Court of the United States that the acceptance of a draft dated at Chicago in Illinois, drawn by a resident of that State upon a resident of another, and accepted by the drawer without funds and purely for the accommodation of the drawer, to whom it was returned to be returned to be negotiated in the State where the drawer resides, and the proceeds to be used in his business there, he to provide for its payment, is, after it has been negotiated in the hands of a *bona fide* holder for value, without notice of equities, to be regarded as a contract made in the State where the draft is dated and drawn, even though by the terms of the acceptance the draft is payable in the State where the acceptor resides. In this case the liability against the acceptor was created when the draft was negotiated to a *bona fide* holder, and it was immaterial that the acceptor resided in New York and there wrote his name to the acceptance. In legal effect he accepted the draft in Chicago, when by his authority the drawer negotiated it there, and thus caused effect to be given to his acceptance.

In *Moodie* v. *Morall*, 1 Const. R. 367, the action was *assumpsit* on two notes dated March 14, 1804, at Charleston on defence by the endorser, of want of due notice to him of nonpayment by the maker, the Constitutional court held that Charleston, being the place where the note was made and endorsed, shall be presumed to be the place of residence of both maker and endorser for every merchantile purpose. It is laid down by Chancellor Kent in 3d vol. of his Commentaries, p. 96, that if there be no other evidence of the makers residence than the date of the paper, the presumption is that the maker resides where the note is dated, and the same is stated to be the rule by Livingston, Justice, in *Stuart* v. *Eden*, 2 Caine's 127.

The *Freeman's Bank* v. *Ruckman*, 16 Gratt. 126, was an action of debt brought by the plaintiff as assignee of the payee, and the declaration averred that the note sued on was made in Boston, and was on the same day endorsed and delivered to the plaintiff, a banking corporation under the laws of Massachusetts, upon demurrer, the court of appeals of Virginia held that the assignment was made in Massachusetts.

In *Wilson* v. *Lazier*, 11 Gratt. 477, it was held that a note made in a particular country, is to be deemed a note governed by the laws of that country, whether it is made payable there, or it is payable generally without naming any particular place. In *Fant, &c.* v. *Mahew*, 17 Gratt. 47, it was held that a note signed in blank in Virginia and sent to Maryland to be filled up there, and it is filled up there, and at the same time and place is endorsed by the payee to the holder for value, is a Maryland contract, even though the note is headed "Warrenton, Virginia." Judge Joynes delivering the opinion of the court cited the language of the same court in *Wilson* v. *Lazier*, *supra*, and added, that these principles are predicated of the intentions of the parties who are naturally and reasonably supposed to contemplate in the transaction the *lex loci contractus*. The appellants in sending their signatures to Baltimore did so with the intention that the blanks should be filled and the notes used there. They were *"incipient bills,"* and when perfected by the payee and made payable in Baltimore, they must be taken as subject to the laws of Maryland by the combined operation of the acts and intentions of the parties.

*Wilkinson. & Co.* v. *Holloway*, 7 Leigh 277, was a suit brought in Virginia to recover a debt contracted in Petersburg for goods sold there to a debtor who at that time resided, and who thereafter continued to reside in North Carolina. The debtor pleaded the statute of limitations and the court of appeals held that by sec. 14, ch. 125 of the Revised Code of 1819, which in this respect was identical with sec. 18, ch. 104 of the Code, as amended by the Act of 1882, he was precluded from making such defence. He was considered a person, who had before, resided in Virginia, though he had been there temporarily, and for a day only. The same principle was announced by this Court in *Pugh* v. *Cam-*

*cron's Administrator,* 11 W. Va. 523. In that case, a single bill not specifying where it was payable, bearing on its face eight *per cent.* interest, executed to Pugh in Ohio, in 1858, by Joseph Cameron who resided there, was signed in Virginia by Samuel Cameron as his surety, where he and Pugh resided, was held by this Court to be an Ohio contract, and the same being valid under the usury laws of Ohio, the surety although he signed it in Virginia could not avail himself of a plea of usury under the laws thereof, then in force, which declared such a contract void.

In *Abell* v. *Penn. Ins. Co.,* 18 W. Va. 400, Judge Green delivering the opinion of this Court said: "If the contract to be sued on is one to be performed in this State, the merest temporary presence of the defendant in this State when the contract was made is to be regarded as bringing the defendant within the words of the statute, 'a person who has before resided in this State.'" As therefore the acceptance of a bill for the accommodation of the drawer, creates no liability on the acceptor until the bill has passed into the hands of an endorsee for value, so the signing of a note as surety, while the same remains in the hands of the principal, creates no liability on the surety until the note is delivered. It is the negotiation of the bill in the one case, and the delivery of the note in the other which is the consummation of the contract.

It only remains to be considered whether in point of fact or in contemplation of law the defendant Detrick resided in this State at the time the note sued on was made by him to the plaintiff, and afterwards departed from it, and thus obstructed the plaintiff in the prosecution of his right of action thereon against him. In determining this question we must confine ourselves to the competent evidence introduced on the part of the plaintiff set out in the demurrer to the evidence. By this evidence it clearly appears, that on January 23, 1871, when the note bears date, both the plaintiff and Reinhart resided in Jefferson county in this State, the former at Ripon, and the latter at Kabletown, where from 1870 to 1875 he was engaged in business; that the note was dated at Kabletown, and was payable generally, to the plaintiff twelve months after its date with interest from date at ten

*per cent.;* that the annual interest due thereon for the years 1871 and 1872, was paid to the plaintiff on January 23, in each of the years 1872 and 1873 and that the annual interest thereon, was thereafter paid to Stouffer; that Detrick by his pleadings as well as by his conversations with Stouffer and Kable admitted that he had executed the note; and although the question whether he had executed the note in this State was directly in issue between him and the plaintiff, yet he never, so far as this record shows, pretended that this note was not in fact executed by him at Kabletown, where it purports to have been executed, or that it was not to be paid there where the plaintiff then resided, or that at that time, he did not reside in this State. Neither does the letter of Reinhart introduced in evidence dated at Duffield's, January 23, 1871, contain anything to indicate that Detrick, if it was in fact addressed to him, did not then live in this State much less to show where he did live, when the note was executed, and where he did in fact execute the same. These facts were within the personal knowledge of the defendant, and he could have removed all doubt and uncertainty on this material part of his defence, if he had been examined as a witness as he might have been, and having this evidence in his possession and failing to produce it, is a strong presumption, that he did execute the note in this State. From these authorities, as well as from the evidence and circumstances surrounding the transaction, it seems to us that, if the jury had found for the plaintiff upon any of these issues, their verdict could not have been set aside because the same was not warranted by, or was contrary to the evidence. Bearing in mind the rule that a demurrer to evidence admits all the facts directly proved by, or that a jury might fairly infer from the evidence of the demurree; and that in drawing these inferences it is incumbent on the court to adopt those most favorable to the demurree; we are of opinion that the note of $1,000.00 in the plaintiff's declaration mentioned was a contract made by the defendant in this State to be performed therein; and that by the removal of the defendant and his continued absence from this State from the time it became payable until the commencement of this action the plaintiff was obstructed in the prosecution of his right of

action thereon against him, and that upon the demurrer to evidence, the case is for the plaintiff.    The judgment of the circuit court of Jefferson county must be reversed with costs to the plaintiff in error.    And this Court now proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that upon the demurrer to evidence the law is for the plaintiff, and that the plaintiff in error recover against the defendant in error the sum of $1,235.00 the damages assessed by the verdict of the jury, with interest thereon from March 7, 1884, together with his costs by him about the prosecution of his action in said circuit court expended.

REVERSED.

SNYDER, JUDGE, Dissenting:

I fully concur in the position and conclusion of the foregoing opinion, that the note sued on was made and payable in this State, and that it must be regarded as a West Virginia contract, but inasmuch as it appears that the defendant had been a non-resident of this State for more than ten years after the maturity of said note and prior to the institution of this action and was as such proceeded against by attachment and order of publication or its equivalent, by service of process out of this State, it seems to me, the most material question presented by the record in this case is, whether or not the defendant *obstructed* the right of the plaintiff to bring this form of action; that is, to proceed against him as a non-resident of this State?

Our statute provides, that, "Where any such right * * * shall accrue against a person who *had before* resided in this State, if such person shall, *by departing* without the same * * * *obstruct* the prosecution of such right * * * the time such *obstruction* may have continued shall not be computed," &c.    Sec. 18, ch. 102, Acts 1882, p. 303.

It seems to me, that the true intent and meaning of the statute is, that it shall apply only where it appears the plain-

tiff has been *obstructed* in his right to bring the kind of action or proceeding in which he invokes the assistance of the statute. The important enquiry is, was the plaintiff *obstructed* by the defendant in his right to bring this action? Is it not entirely immaterial that the defendant resided in this State when the note was made and that it is a West Virginia contract, when it appears that he has been a resident of the State of Maryland for more than ten years after the maturity of the note and prior to the bringing of this action? This action was brought against the defendant as a non-resident and process was served upon him in the State of Maryland, where he has resided ever since 1871. For ought that appears the plaintiff might have sued him and attached his property in this State and served process on him in Maryland as well five or ten years before as he did when he brought this action. I can not discover how the residence of the defendant out of the State obstructed the plaintiff's right to bring this kind of action. On the contrary, his non-residence was essential to the bringing of this action and it could not have been brought if he had not been a non-resident. How then does it appear that the plaintiff was *obstructed* by the defendant in his right to bring this action? It seems to me that the plaintiff in order to avail himself of the benefit of the statute should establish such a state of facts as will bring his case within its protection. It might be, that if he had shown, that, so far as he could discover or knew, the defendant had no property in this State subject to attachment prior to the commencement of this action, that that fact would entitle him to the benefit of the statute. But so far as this case discloses the defendant may have had property or effects in this State subject to attachment ever since he left it.

It does not appear to be enough under the statute for the defendant to depart out of the State, but he must "by departing without the same *obstruct* the prosecution of such right." It is not controverted that, if this action had been commenced by personal service upon the defendant *in this State*, the case would be within the statute, because the defendant by departing out of the State obstructed the plaintiff's right to prosecute such action. The question then arises did the pleadings in this action properly present the questions above

suggested? Some members of the Court are of opinion that in the trial of the action upon the issues as they were made up in this case, neither the attachment, which is simply an auxilary proceding and not a part of the action itself, nor the process, could be looked into or considered by the Court. That so far as the record and pleadings, which the Court could consider, disclosed, the action appeared to have been commenced by personal service upon the defendant in this State, and so considering the facts the plaintiff was plainly entitled to the benefit of the statute. The defendant by appearing to the action and pleading the statute of limitations in bar of the action gave the court jurisdiction over him personally, and the plaintiff by his replication that the defendant by departing out of the State had obstructed his right to prosecute his action, brought himself within the protection of the statute. Then, if the defendant desired to raise the questions above suggested, he should have rejoined that he had been in this action proceeded against by attachment as a non-resident and that process had been served upon him outside of this State. This would have presented one of the questions suggested. If it had been desired to raise the other question suggested, the plaintiff should have sur-rejoined, that so far as he knew or could discover by reasonable diligence, the defendant never had any property or effects within this State subject to attachment at any time before this action was commenced, or until it was commenced, or within ten years before, using the one form or the other as he might be advised was most available.

Such being the views of a majority of the Court they think the judgment of the circuit court was properly reversed, but none of them, as I understand, consider that the questions above indicated or suggested were decided by this Court in this case. I have, therefore, without passing upon any of said questions or the propriety of the decision in this case, deemed it proper to make the foregoing statement in order that no misapprehension may arise out of the opinion delivered in this case, and that the construction placed upon it by the majority of the Court may be known.