# CHARLESTON.

## McCREERY v. BANK.

55 663
60 654

### Submitted March 1, 1904—Decided April 22, 1904.

1. FIDUCIARIES—*Presumed to Act in Good Faith.*
    Fiduciaries are presumed to have acted in good faith and performed their duty, and not to have committed breaches of trust. (p. 669).

2. FIDUCIARY—*Jurisdiction.*
    Certificates of bank stock in the name of P. taken up by the bank and reissued to B. P., executor of P., and by B. P. pledged as collateral security for notes made by B. P., the executor in due course of the administration of the estate of P., cannot be recovered from the bank so holding such certificates by an administrator *de bonis non* with the will annexed, of P. (p. 670.)

Appeal from Circuit Court, Mercer County.

Bill by J. W. McCreery, administrator, against the First Natoinal Bank of Bluefield. Decree for defendant, and plaintiff appeals.

*Affirmed.*

R. C. & B. McCLAUGHERTY, for appellant.

A. W. REYNOLD, for appellee.

McWHORTER, JUDGE:

Edwin Prince died testate in the year 1894. His will was

admitted to probate on the 10th day of December of that year. By his will he appointed his wife, Lockey F. Prince, Burke Prince, his son, and James H. McGinnis, as executors. Burke Prince alone qualified as executor. The others declined to serve as such. Among the assets of the estate which came to the hands of the said executor were $10,000 par value of Bank of Hinton stock. Burke Prince, the executor had the bank take up said stock and issue certificates thereof to him as executor of Edwin Prince. On the 21st day of November, 1896, Burke Prince made a negotiable note to his brother Ash M. Prince, which was endorsed by the said Ash M. Prince and J. C. Darst & Company, which he had discounted at the First National Bank of Bluefield, and deposited with the bank as collateral security for the note certificates of the said Bank of Hinton stocks —fifteen shares of the par value of $100 per share. He also made three other notes to said bank, aggregating the sum of $619.69, and delivered ten shares of the said Bank of Hinton stock, amounting to $1,000 as collateral therefor. Burke Prince, the executor, died in February or March, 1899, and John W. McCreery was appointed on the 28th of March, 1899, as administrator *de bonis non* with the will annexed of the estate of said Edwin Prince. Said McCreery filed his bill in the circuit court of Mercer county against the First National Bank of Bluefield to recover from said bank the said Bank of Hinton stock, as belonging to the estate of said Edwin Prince, claiming that Burke Prince, who had possession of them as executor of the will of said Edwin Prince, had disposed of them for his own purposes and individual benefit, and that the same was an illegal and unwarranted use and conversion of said stocks, and an abuse of the trust confided to him by the will of his testator, and being such was ineffectual to transfer any interest therein or title thereto to the defendant, and that the said defendant bank had knowledege that said Burke was not the true owner of said stocks, and that he was using and pledging them and obtaining money thereon from the defendant for his own personal individual use and purposes, and to secure the payment of loans of money made to him personally by said defendant bank, and that the said bank occupied no other nor higher grounds than said Burke Prince, and that the said bank held said certificates of stock as trustee for the estate of Edwin

Prince, deceased, and that a court of equity would compel it
to deliver the same to plaintiff, to be disposed of in due course
of administration by him as administrator *de bonis non* with
the will annexed of said estate; and prayed that said bank be
held to be a trustee of said stocks for the use of said estate,
and that it be compelled to deliver up the same to plaintiff,
and for general relief.

The defendant bank filed its demurrer and answer, averring
that the title to the Bank of Hinton stocks was not in plaintiff
as administrator *de bonis non* of said Edwin Prince, and that he
was not entitled to the possession thereof, and that the said
stocks were administered by said Burke Prince, executor of
Edwin Prince, and converted, changed and reduced to pos-
session by him in due course of administration of said estate,
so as to completely invest him with the title thereto, and that
the title thereto was now invested in the personal representative
of said Burke Prince, subject to the pledge thereof as collateral
security to the defendant, and subject to all defendant's rights
and interest therein, admitting that the said Burke Prince had
caused the original certificates to be taken up and to be issued
to him in his name as executor of Edwin Prince, deceased, and
that as executor the said Edwin Prince had made his negoti-
able note to said Ash M. Prince, payable at said bank, which
note was made for the purpose of obtaining money from said
bank by Burke Prince, executor, endorsed by said Ash M. Prince,
and delivered to the bank, together with fifteen shares of the
said stock as collateral, contemporaneous with the loan and pay-
ment to said Burke Prince of said $1,000; that the bank still
held the said shares of stock as collateral security, which $1,000
note was renewed from time to time, the said loan being made
on the 21st of November, 1896. Respondent denied that said
note was executed and stocks deposited as collateral for the pur-
pose of obtaining said $1,000, or any part thereof, for the in-
dividual and personal use and benefit of said Burke Prince,
and if there was any intention on said Burke's part to use said
money for his own purposes in any manner inconsistent with his
duties as executor, respondent had no knowledge or notice of it;
that respondent's understanding was that Burke Prince was
acting in perfect good faith and in lawful manner with said
stocks, and it had no notice whatever, that said Prince was

diverting the effects of said estate from the proper course of administration, and denied that he was doing so; and that it held two other negotiable notes made by said Burke Prince as "B. Prince," payable at the said bank, one dated February 2, 1899 for $250, and the other dated February 11, 1899, for $219.69, both of which were due and unpaid, and for each of which said bank was holding five shares of the said Bank of Hinton stock transferred and pledged to said bank as collateral security for the respective amounts of said notes by said Burke Prince, executor, according to the terms and conditions stipulated in said notes; and denied that said Burke Prince was making any improper use of said stocks, and denied that he obtained said money for his own private benefit, and denied that he did not have the right to so deposit them as such collateral security; that it had no notice when it received the assignment of said original note, and the accompanying transfer of said stock as collateral security therewith, that said Prince obtained said money for his own private use and benefit, or that he was making an improper use of said stocks when he deposited and transferred them as collateral security; and averred that said stocks had been administered upon by said Burke Prince as executor; that their nature had been changed in due course of administration, and that they no longer stood in the name of Edwin Prine, but that they had been transferred and were then in the name of Burke Prince as executor; and denied that the stocks belonged to the estate of Edwin Prince at the time they were transferred as collateral security, and denied that the transfer by said Burke Prince was improper, and denied all allegations charging it with notice of any and all improper use of said stocks, and the money for which they were deposited as security, and denied that it stood on no higher ground than Burke Prince, or that it held said stock as trustee for the estate of Edwin Prince, deceased, and denied the right of plaintiff to any relief prayed for in his bill.

Depositions were taken and filed in the cause, and the cause heard on the 11th of February, 1903, upon the bill and exhibits, the defendant's demurrer and answer, and exhibits therewith, and general replication, and the depositions of witnesses and exhibits filed with the same, and upon the copy of the bond of Burke Prince as executor of Edwin Prince, deceased, filed in

the cause, and upon argument of counsel, the court was of opinion that the plaintiff was not entitled to the relief prayed for in the cause, and entered a decree dismissing his bill, and with costs to the defendant.

It is insisted by appellant that the defendant bank could not make loans to the executor and receive the stocks as collateral, unless it had been made to appear affirmatively that it was for the benefit of the estate. In 7 A. & E. E. L. (1st Ed.) 288, the law is thus stated: "The executor or administrator having absolute power of disposition over the personal effects, may sell, pledge, or mortgage the assets; and, in the absence of collusion, they cannot be followed by creditors or legatees, either general or specific, into the hands of the alienee, nor is it incumbent upon the purchaser or mortgagee to see the money obtained properly applied, although he may know that he is dealing with an executor. To establish collusion it must appear that the purchaser or mortgagee participated in the *devastavit,* or that the sale or mortgage was made by the personal representative as security for, or in payment of, his individual debt. In the latter case, the transaction itself gives the purchaser or mortgagee notice of the misapplication and necessarily involves his participation in the *devastavit."* Citing *McCloud* v. *Drummond,* 17 Ves. 154. And in *Scott* v. *Tyler,* 2 Dickens 712, at page 725, Lord Thurlow says: "It is of great consequence that no rule should be laid down here which may impede executors in their administration, or render their disposition of their testator's effects unsafe or uncertain to the purchaser. His title is complete by sale and delivery; what becomes of the price is no concern to the purchaser; this observation applies equally to mortgages and pledges, and even to the present instance where assignable bonds were merely pledged without assignment. It applies also, where the transaction is with one of many executors, for each is competent." The only evidence tending to bring to the knowledge of the officers of the bank, that the money or any part of it, was to be used by Burke Prince for his individual purposes and benefit, is that of Ash M. Prince, and his testimony is excepted to as being incompetent. It is sought to prove by said Ash M. Prince that the loans of the $1.000 and the $219.69 were borrowed for Burke's individual benefit, and that the bank knew it. This was a transaction with Burke

Prince. Although Ash M. Prince claims to have negotiated the loans, Burke signed the notes, received the loans and deposited the Bank of Hinton stocks as collateral security therefor. He was a party to the transactions, and since deceased. In *Fouse* v. *Gilfillan*, 45 W. Va. 213, (syllabus point 7), it is held: "In such a case the test of the admissibility of the testimony is, does it tend to prove what the transaction was?" *Owens* v. *Owens*, 14, W. Va. 88; *Strong* v. *Dean*, 55 Barr. 337; *Stanley* v. *Whitney*, 47 Barb. 586; *Anderson* v. *Jarrett*, 43 W. Va. 246. Even if the testimony of Ash M. Prince were admissible, his testimony on cross examination shows that at the time of the negotiations of the $1,000 note, which was in November, 1896, Burke Prince was in condition to rightfully appropriate to his own use as one of the heirs of Edwin Prince more of the assets of the estate than the amounts involved in the transaction in question; when he was asked: "Do you mean to say that in the transaction in which the $1,000 was borrowed from the First National Bank, B. Prince and yourself acting in that transaction for him were knowingly diverting these Bank of Hinton stocks from the due course of administration of the estate of Edwin Prince?" He answered, "I do not. At that time I supposed that B. Prince had a sufficient interest in the estate as one of the heirs to make good the stock that he put up as collateral." And the exhibit filed with the deposition of plaintiff as a witness shows this supposition to be true. Ash M. Prince and Burke Prince were brothers and heirs at law of Edwin Prince, deceased. With the deposition of plaintiff himself he filed copies of settlements of the executorial accounts of the said Burke Prince from which it appears that at the beginning of the second settlement, marked "Exhibit No. 3," with said disposition of plaintiff, the account starts out with a balance due, June 2, 1896, from executor "on last settlement $1,192.15;" and starting with this as a basis the debts and credits up to the 26th of November, 1896, the date of the negotiation of the $1,000 note, show there was a difference of between $5,000 and $6,000 in favor of the executor, from which it would appear that Ash was right in supposing that his brother had a sufficient interest in the estate, as one of the heirs, to make good the stock he put up as collateral. If the brother, who must have been familiar with the affairs of the estate of

his father, being himself an heir and also one of the sureties on the executor's large bond of $100,000, was satisfied with the administration of the estate, knowing that it was at that time largely indebted to the executor, surely the circumstances were not sufficiently suspicious to cause the bank to institute an inquiry into the official conduct of the executor. The presumption is that his acts are legal and all done in good faith. "Adminisrators and trustees are presumed to have performed their duty and not to have comitted breaches of trust." Jones on Evidence, sec. 12. All knowledge or notice is denied on his part, by the testimony of Edwin Mann, president of the defendant bank, and W. C. Pollock, cashier of the same, who states that he was the officer in charge (Mr. Mann, the president, being away at the time) who received the fifteen shares of Bank of Hinton stock, as collateral, denied positively all knowledge or notice that the money was being received by said Burke Prince for his individual benefit. "Executors and administrators have authority, unless restricted by statute, to mortgage, or pledge the personal property of their decedents for the purpose of raising money or securing debts; and this authority rests on the same principles, is governed by the same rules, and is subject to the same limitations, in general, as apply to sales." 11 A. & E. E. L. (2d Ed.) 1031. And *Id.* 1325: "At common law an administrator *de bonis non,* as the phrase designating his office implies, succeeds only to such of the assets of the estate as have not been administered by the executor or administrator who preceded him at the time of his death, or are capable of being identified as the property of the decedent, and such of the debts due to the decedent as remain unpaid. With respect to such assets his powers, duties, and liabilities are the same as those of his predecessor, and he may recover them from the original executor or administrator, or from any one in whose possession they may be found; but he cannot require a settlement of the accounts of the former executor or administrator." In *Goettberg* v. *Bank,* 26 Abb. N. Cas. (N. Y. Supreme Ct.) 50, it is said: "There must be direct evidence that the executor or administrator was acting for a purpose not in connection with the administration of the estate, and such evidence is not furnished by the fact that the transaction was in the executor's individual name, and that the pledgee

.could have ascertained by inquiry that the securities pledged were held by the executor as such." In *Jones* v. *Clark,* 25 Grat. .642, in speaking for the court, Judge Moncure says: "There can be no doubt but that an executor is invested with the legal ·title to the assets of his testator, which come to his hands for ;administration, whether they arise from personal estate or from real estate, directed by the will to be sold for the payment of ,debts and legacies, and sold accordingly by the executor. Nor .can there be any doubt but that a *bona fide* purchaser, for value ;and without notice of a portion of such assets, either directly .or indirectly, from the executor, will acquire a good title there-·to, even though the executor commit a *devastavit* by making the sale for the purpose of converting the proceeds to his own use, and by actually so converting them." *Field* v. *Schieffelin.* 7 John. Chy. 150. In U. S., for *Wilson* v. *Walker,* 109 U. S. ·258, it is held, that an administrator *de bonis non,* appointed in place of an administrator removed, is not entitled to demand .of the administrator so removed, the proceeds of a claim against the United States due the intestate and collected by the former administrator, nor can he maintain suit against the surety of the former administrator to recover damages for failure by the former administrator to pay such sum to the administrator .de bonis non; and it was further held that a decree directing ·such former administrator to pay over to the administrator · *de bonis non* appointed in his place a sum collected by the former, from the United States for a claim due to the intestate was void for want of jurisdiction." *Wilson* v. *Arrick,* 112 U. S. ·83. In *Sibbs* v. *Philadelphia Savings Fund Society,* 25 Atl. Rep. 1119, it is held: "An administrator having reduced a .deposit of intestate in a bank to his possession, by having it transferred to his credit as administrator, his personal represen-tatives are, on his death, entitled to receive it from the bank; ·so that, it having been paid them, the bank cannot be held liable by intestate's administrator *de bonis non.*" *Hartson* v. _Elden,* 44 Atl. Rep. 156.

There is no error in the decree and the same is affirmed.

*Affirmed.*