# CHARLESTON

COOPER *v.* UPTON.

Submitted June 14, 1906.    Decided November 27, 1906.

1. BROKERS—*Right to Commissions—Contract.*

Where a contract between the owner of land and a real estate agent provides in substance that, if a party or parties presented by the agent want to buy the land at a price satisfactory to the owner, the agent shall be paid five. per centum commissions, the agent must substantially comply with the contract, by presenting or producing a party or parties, able, willing and ready to buy the land at a price satisfactory to the owner, before the agent will be entitled to commissions.    (p. 649.)

2. SAME.

If the negotiation resulting in a sale of the land was not carried on by the agent but by the owner, the agent must show that he was the efficient cause of the negotiation resulting in the sale, before he will be entitled to commissions.    (p. 649.)

3. SAME.

When the owner voluntarily consummates a sale and conveys the land, this is conclusive evidence that the price is satisfactory, and that the purchaser is willing and ready to buy.    (p. 651.)

4. EVIDENCE—*Presumptions—Failure to Call Witnesses.*

There is no presumption against a defendant for failure to call witnesses, or any particular witness, when, the plaintiff, carrying the burden of proof, has not made a *prima facie* case.    (p. 654.)

5. SAME.

Such presumption cannot be used to relieve the plaintiff from the burden of proving his case.    (p. 654.)

6. ACCOUNT STATED.

There can be no account stated where there is no pre-existing debt or liability.    (p. 656.)

7. SAME—*Effect.*

An account stated, in the absence of fraud, mistake, error or omission, determines only the amount of the debt when a liability exists.    Alone, it cannot create a liability where none previously existed.    (p. 656.)

8. SAME.

Where there is no pre-existing debt or liability, the rendering of an account, to one who keeps it without objection, does not make an account stated.    (p. 656.)

Appeal from Circuit Court, Upshur County.

Bill by John T. Cooper against E. M. Upton. Decree for plaintiff, and defendant appeals.

*Reversed. Bill Dismissed.*

. Dent & Dent and Jake Fisher, for appellant.

Linn & Byrne, for appellee.

Cox, Judge:

This suit in equity, with attachment, was brought by John T. Cooper, of Parkersburg, West Virginia, against E. M. Upton, of Rochester, New York, in the circuit court of Webster county, to recover five per centum commissions claimed by Cooper upon the sale price of a certain tract of land known as the "Porter" or "Upton" lands, said to contain 10,012 acres, lying in Webster, Randolph and Pocahontas counties. The cause was removed to, and heard by, the circuit court of Upshur county, resulting in a decree in favor of Cooper for $7,718.25 and costs, with an order of sale of certain real estate levied on to satisfy the decree in favor of Cooper. From this decree Upton appeals.

The record presents three questions, which will be considered in the following order:

(1) What was the contract, if any, between appellant and appellee in relation to commissions? The contract is disclosed by two letters between the parties—one by appellee to appellant dated November 22, 1900, and a reply thereto by appellant dated November 26, 1900. In the letter of appellee, after naming certain prospective purchasers of the land, he says: "These parties are presented, as are all others, on condition that you secure me in an absolute commission of (5 per cent) five per cent in case of sale to or through any of the parties." In the reply of appellant he says: "I have yours of the 22nd, and note what you say about the syndicate of eastern and English parties. I will not write these parties at all, but if they want the property at a satisfactory price, we will pay 5 per cent commissions, although this is an exorbitant price." There was other correspondence between the parties, and their evidence was taken at length, but there is nothing substantially changing the contract as shown by these two letters. The contract in substance was, that, if a party or parties presented by appellee wanted to buy the land at a price satis-

factory to the owner, the appellee should be paid five per centum commissions. Under this contract, before the appellee would be entitled to commissions he must substantially perform the contract by presenting or producing a purchaser able, willing and ready to buy the land at a price satisfactory to the owner. *Nichols* v. *Whiteacre*, (Mo. App.) 87 S. W. Rep. 594; *Forrester* v. *Price*, 6 Misc. (N. Y.) 308; 23 Am. & Eng. Enc. Law 915–16; 19 Cyc. 240-2; *Green* v. *Owings*, 19 Ky. L. R. 580; *Weibler* v. *Cook*, 78 N. Y. Supp. 1029; 5 Current Law 449-51. If the final negotiation resulting in a sale was carried on by the owner and not by the agent, the latter must have been the efficient cause of the negotiation by the purchaser in order to entitle him to commissions. *Halterman* v. *Leining*, 90 N. Y. 397.

(2) Did the appellee substantially comply with the contract, and thereby become entitled to commissions? At the time of the contract, the records of the counties in which the land was situated showed that appellant was the owner of the land in his own name, and was taxed therewith, but in fact he seems to have held it for the Elk Land and Lumber Company, in which he and others were interested. The sale of the land, at the price upon which appellee claims commissions, was made on the 8th day of April, 1902, through J. K. Moore, of Washington City, to Arthur Lee, trustee for Henry G. Davis. An agreement or memorandum was on that day entered into by Moore, as agent for the appellant and the other owners of the land, with Lee, trustee, for the sale of the land, at $13.00 per acre, and $5,000.00 was then paid by check of Henry G. Davis. On the 16th of May, 1902, those interested in the land or in the Elk Land and Lumber Company, including appellant, entered into a written agreement reciting the facts in relation to the sale, and ratifying and confirming the sale. This sale was carried out in part by deed made the 9th of July, 1903, by appellant and wife and Lee, trustee, and wife to Henry G. Davis, whereby the facts in relation to the sale were recited and 7,528 acres of land (being the part lying in Randolph and Pocahontas counties) were conveyed to Davis. The deed further provided that the title to the residue of the land (being the part lying in Webster county) should remain in appelllant, subject to the contract of sale to Arthur Lee, trustee. It is argued that

the said agreement of sale is void, and that its date cannot be taken as the date of the sale, because it was made without authority of the owner or owners of the land. The answer to this is, that Moore professed to act for the owner or owners, and that the sale was afterwards ratified and confirmed by the owner or owners, and that conveyance of part of the land was made pursuant to the agreement of sale. Consequently, the 8th of April, 1902, must be taken as the date of the actual sale or contract of sale. *Ruffner* v. *Hewitt*, 7 W. Va. 585; *Union Bank* v. *Bierne*, 1 Grat. 227; *Devendorf* v. *Oil Co.*, 17 W. Va. 135. The question then is, did the appellee present or produce the purchaser at this sale? The fact that a sale was consummated and a deed for the land made voluntarily must be taken as conclusive evidence that the price was satisfactory, and that the purchaser was willing and ready to purchase. 5 Current Law 450; *Marcey* v. *Whallon*, 115 Ill. App. 535; *Marks* v. *Elliott*, 90 N. Y. S. 331; *Norman* v. *Hopper*, 80 Pac. Rep. 551.

The theory of the appellee is that he was the efficient cause of the negotiation and purchase by Davis. He does not claim that he had any correspondence, negotiation or connection previous to the sale with Davis or Lee directly. He does, however, claim that Henry G. Davis and S. B. Elkins were general business partners and were partners, or jointly interested, in this purchase at the time it was made, and that his efforts and correspondence with Elkins and with others caused the negotiation and purchase by Davis, and that the purchase by Davis was in fact for Davis and Elkins. That Elkins was interested in the land at a date subsequent to the sale cannot be disputed; but was he interested at the time of the purchase by Davis? This constitutes one of the principal controversies in the case, bearing upon which much of the evidence was introduced. It is not our purpose to detail at length the evidence; but we shall notice some of the salient circumstances and features of the evidence relied upon by the appellee to show that Elkins was interested at the time of the sale, and that the correspondence and efforts of appellee with Elkins caused the negotiation and purchase by Davis:

(a) Appellee insists that, by failing to deny, the appellant has admitted to be true the allegations of the bill that "at and for a long time prior to the date of the execution of said

contract (of sale) Henry G. Davis and S. B. Elkins were and had been partners in the purchase, development and sale of large boundaries of coal and timber lands in that section of the state in which the 10,012 acres is situated," and "that it was their custom where land purchases were made to take the title thereto in the name of one or the other of said partners for the benefit of both." Turning to the answer, we find that it denies that Davis and Elkins "were jointly beneficiaries," and denies "that the said Davis and Elkins were business partners," and denies "the allegation in said amended bill that it was and is the custom of said Davis to take property in the name of said Elkins or of a trustee for himself and said Elkins for his benefit in any manner." These constitute a substantial denial of the partnership relations between Davis and Elkins alleged in the bill, and throw the burden of proof thereof upon appellee.

(b) It is shown that Henry G. Davis is the father-in-law of S. B. Elkins and Arthur Lee. Of course, standing alone, this is no proof of partnership or of joint interest.

(c) It is shown that both Davis and Elkins were interested in the purchase or ownership of other lands and business enterprises, and that each was interested in, and the owner individually and separately of, other lands. In no case is it shown that Davis and Elkins were partners. No agreement to share profits and losses is shown. The most that can be said of the evidence in this regard is, that it shows that in some cases Davis and Elkins were interested in the same properties and business enterprises. Usually, others also were interested with them. In some cases, each was interested alone. This evidence is insufficient to established that they were interested together in the purchase in question.

(d) With the evidence of appellee he files his correspondence with Elkins, covering a period from October 30, 1901, to May 12, 1902, inclusive. This correspondence shows that appellee endeavored to interest Elkins in the purchase of this land and other lands, and that Elkins did become interested to the extent of writing a letter to appellee dated January 30, 1902, asking a price on this land or an interest in it, and also asking how long after April 1st appellee could give an option. On May 12, 1902, after inquiry by appellee as to a resale of the land, Elkins wrote to appellee: "We will not

sell the Upton tract, as we bought it to hold." This letter
was a month and four days after the sale in question. It is
argued that this letter shows that Elkins was interested in
this land. If so, it does not show when and how he became
interested, or that he was interested at the time of the pur-
chase by Davis.

(e) The plaintiff testifies that on the 19th of April, 1902, in
Washington City, he learned from Arthur Lee that he repre-
sented Davis and Elkins in the purchase of West Virginia
lands, and that they had just bought the Upton lands; that
Davis came into the room at the time, and stated, "We have
just bought the Upton lands," and that later in the same day
at the residence of Elkins he stated that "he and Senator
Davis had bought the Upton lands." These statements fall
short of showing with certainty that Elkins was interested at
the time the sale in question was made. They would be
equally true if Elkins was not interested at the time of the
purchase by Davis, but became interested afterward and before
the statements were made. No objection to the Elkins letter
and to these statements of Davis, Elkins and Lee was brought
to the attention of, and passed on by, the lower court. Hence,
they are before us without objection. We do not deem it
necessary to decide that, so far as they are purely hearsay
evidence, they have or have not any probative force, for the
reason that if given full credit they fail, in our judgment,
to establish with certainty the fact sought to be established.

(f) It is shown that appellant had learned from a third
party, before the time of the transactions here involved, that
Davis and Elkins were trying to buy land in that section of
the state. On April 3, 1902, appellee wrote to appellant
saying: "I would advise you to keep matters warm with
Senator Elkins, as I believe that he and his associates are in
a position to afford to pay a much higher price than any one
else." No one is named in this letter except Elkins. Who
else was intended by the writer by the phrase "he and his
associates?" Certainly only some person or persons who
would be interested with Elkins in the purchase of the land.
Before the phrase can be taken as a presentation of Davis, it
must be shown that he was interested with Elkins in the
purchase of this land. It is unreasonable to say that the
writer of this letter intended by that phrase to present a per-

son not interested with, but who acted independently of, Elkins, and with whom the writer had no correspondence, negotiation or connection.

(g) It is shown that appellee made a general effort, by correspondence and otherwise, to make a market for this and other lands. He claims that such general effort caused the negotiation and purchase by Davis. The connection between the general effort and this particular negotiation and sale is not shown. The conclusion is not warranted that any general effort of the appellee caused the negotiation and purchase by Davis. *Halterman* v. *Leining, supra.*

Considering all the circumstances and evidence relied upon by appellee, they fail to show that Elkins was interested at the time of the sale in question, or that appellee's efforts with Elkins or others caused the sale to Davis. Many of the circumstances are consistent with the hypothesis that Elkins was interested at the time of the sale, but they are not of that conclusive and convincing nature necessary to prove with certainty a fact. Generally they are consistent with the hypothesis that Elkins first acquired an interest after the sale in question.

It is insisted that there is a presumption against the appellant, who was the defendant below, because of his failure to call J. K. Moore as a witness. If we are correct in our view that the plaintiff did not make a *prima facie* case, then no presumption can arise against the defendant for failing to call Moore or any other person, to testify. No duty or natural motive can be attributed to a defendant to call witnesses until there is a *prima facie* case against him. The basis of a presumption against a party for failure to produce evidence peculiarly within his power is the natural motive which he is supposed to possess to produce evidence in his favor. Hence, the law raises the presumption that, if he does not follow such natural motive, it is because the evidence would, if produced, be against him. The force of the presumption depends upon, and corresponds in degree to, the force of the motive. If there can be no natural motive to produce, there can be no presumption against the party for failure to produce. Such presumption cannot take the place of proof on the part of the other party carrying the burden of proof. *Stout* v. *Sands,* 55 W. Va. 663; Whart. Ev., section

1267; 16 Cyc. 1064; *Dial* v. *Mo. Pac. Ry.*, 36 Mo. App. 454. See also: *Union Trust Co.* v.*McClellan*, 40 W. Va. 405; *Garber* v. *Blatchley*, 51 W. Va. 147; *Vandervort* v. *Fouse*, 52 W. Va. 214; *Wells-Stone Co.* v. *Truax*, 44 W. Va. 531; *Hefflebower* v. *Detrich*, 27 W. Va. 16; *Dewing* v. *Hutton*, 48 W. Va. 576; *Wheeling* v. *Hauley*, 18 W. Va. 472; *Robinson* v. *Woodford*, 37 W. Va. 377. Other reasons, which many authorities hold sufficient to prevent the raising of a presumption, exist in this case. So far as the evidence discloses, the witness Moore was of Washington City and out of the jurisdiction of the court. Also his evidence, if favorable to appellant, could not have been superior to the evidence of Davis and Lee taken for him, but simply corroborative as to the main questions in issue. It is obvious that the presumption cannot be raised against appellant for failing to call Moore as a witness. 1 Wig. Ev. 285-8.

In this case the appellant did not rest upon the failure of the appellee to make a *prima facie* case. If it might be said that appellee did make a *prima facie* case, then we have the evidence of Henry G. Davis and Arthur Lee taken for appellant, positively to the effect that Elkins was not interested in the sale in question at the time it took place, but that Elkins became interested subsequently, and that appellee was not instrumental in causing the negotiation resulting in the sale to Davis. Davis and Lee say that Lee, trustee, acted in the original purchase for Davis alone, and that the purchase was for Davis alone. Unquestionably, this evidence overcomes any tendency which might be attributed to the evidence and circumstances in the opposite direction. This Court will reverse a decree of the circuit court, determining a question of fact on conflicting evidence, where it clearly appears that the decree is against the weight and preponderance of the evidence. *Wallace* v. *Douglass*, 58 W. Va. 102. It is clear to us that it does not appear that appellee substantially complied with his contract and thereby became entitled to commissions.

(3) Is the appellee entitled to recover upon an account stated? By consent, appellee amended his bill so as to set up an account stated, based upon a letter written by him to appellant dated April 19, 1902. The letter is as follows:

"Mr. E. M. Upton, Rochester, N. Y.    Dear Sir: I learned

today that Senator Elkins and associates have taken over the ten thousand and twelve acres. Thus you will see that (notwithstanding the statement made in one of your recent letters that you did not think the Senator meant business) I have succeeded in interesting him to the point of buying.

"You will remember that, according to our agreement, my commission of five per cent was to become payable upon execution of the contract of sale. This, on a basis of fifteen dollars per acre, the price named by you verbally in Rochester last September, would amount to $7,509. Please bear this fact in mind, for I will hold you to your agreement strictly. Yours truly, John T. Cooper "

This letter was not replied to by appellant, but he retained the letter without objection to its contents. If we are correct in holding that the appellee did not show himself entitled to commissions under the contract, then the question of account stated is solved. To make an account stated so as to evidence indebtedness, there must be two parties, a debtor and a creditor. 1 Cyc. 365. There must be a pre-existing indebtedness, or there is no account to state. *Hopkins* v. *Logan*, 5 M. & W. 241; *Lubbock* v. *Tribe*, 3 M. & W. 606; *Tucker* v. *Barrow*, 7 B. & A. 624; *Lemere* v. *Elliott*, 5 H. & N. 656; 2 Chitty on Cont. 961-2; 2 Chitty Pl. (16th Ed.) 32; *Melon* v. *Campbell*, 11 Pa. St. 415; *Zacarino* v. *Palotti*, 49 Conn. 38; *Van Bebber* v. *Plunkett*, (Or.) 37 Pac. Rep. 707; 1 Am. & Eng. Enc. Law 440; *Stenton* v. *Jerome*, 54 N. Y. 480; *Schutz* v. *Morette*, 146 N. Y. 137; *Knight* v. *Taylor*, (N.C.) 42 S. E. 537; 1 Am. & Eng. Enc. Pl. & Pr. 87; *Powers* v. *Ins. Co.*, (Vt.) 35 Atl. Rep. 331. "Now to make an account stated the account must be stated with reference to a debt at the time due and owing." Baron Parke, in *Gough* v. *Findon*, 7 Exc. 48-50. An account stated, in the absence of fraud, mistake, error or omission, determines only the amount of the debt where a liability exists. It cannot be made the instrument to create *per se* a liability where none previously existed. 1 Am. & Eng. Enc. Law 440; *Davis* v. *Bank*, 19 Wash. 65. Where there is no pre-existing debt or liability, the rendering of an account, to one who keeps it without objection, does not make an account stated. 1 Cyc. 380. *Davis* v. *Bank*, *supra*. These principles apply where it is sought to establish an indebtedness by means of an account stated.

It may be said that some cases indicate that, without fraud, mistake, error or omission, the correctness of the items of the original debt must be taken as shown by the stated account. But this statement must not be taken to mean that the previous transactions can not be investigated so far as to ascertain whether or not the relationship of debtor and creditor existed previous to the account stated. An examination of our cases will show that they are consistent with the principles above stated. Where the doctrine of account stated or account settled has been applied, it has been in those cases in which there was a previous indebtedness or liability. See *Townes* v. *Birchett*, 12 Leigh 173; *Lyne* v. *Gilliet*, 3 Call 5; *Mertens* v. *Nottebohms*, 4 Grat. 163; *McNell* v. *Baker*, 6 W. Va. 153; *Ruffner* v. *Hewitt*, 7 W. Va. 585; *Robertson* v. *Wright*, 17 Grat. 534; *Shrewsbury* v. *Tufts*, 41 W. Va. 212; *McCarty* v. *Chalfant*, 14 W. Va. 531; *Currey* v. *Lawler*, 29 W. Va. 11; *Batson* v. *Findley*, 52 W. Va. 343; *Chapman* v. *Salt Co.*, 57 W. Va. 395; and other cases.

For the reasons stated, the decree complained of is reversed, and the bill dismissed.

*Reversed. Bill Dismissed.*