# CHARLESTON.

McNEEL *vs.* BAKER, ET ALS.

1873.
January
Term.

6 153,
60 657

PAUL McNEEL, PLAINTIFF AND APPELLEE, *against* AARON BAKER AND GEORGE EDMISTON, DE-FENDANTS, AND AARON BAKER, APPELLANT.

Decided February 22d, 1873.

## SYLLABUS.

Upon a general bill for an account, a defendant may set up in his answer as a bar or defence a stated or settled account, and if, upon issue joined upon the answer, it is found to be true, the Court may give leave to the plaintiff to amend his bill, and to surcharge and falsify the stated or settled account, by pointing out or indicating specifically any items of error, mistake, or omission existing therein.

This is a suit in equity instituted in the Circuit Court of Greenbrier county on the 12th day of September, 1868. A final decree was pronounced therein on the 24th day of April, 1872, against the Defendant Baker, from which he appealed to this Court.

The opinion of the Court furnishes a statement of all the facts and questions arising in the cause.

20

*Snyder* for Appellant.

Whether or not A. G. McNeel was *expressly* authorized and directed by the Plaintiff and Edmiston to make a final settlement with Baker, is immaterial, for the proof is conclusive, and the fact is not disputed, that he was sent by the Plaintiff and Edmiston to get from Baker the balance due on the cattle, and, being authorized to collect the money, he must have had the power to settle, in order to ascertain the balance due." The authority to accomplish a definite end, carries with it the power to adopt the legal means to accomplish the object.—Piercy *vs.* Hedrick, 2 W. Va., R. 463. And this rule applies "whether the authority given to the agent is general or special, or whether it is express or implied. In each case it embraces the appropriate means to accomplish the desired end."—Story on Agency, §97 ; Yerby *vs.* Grigsby, 9 Leigh, 387.—"A power to recover and receive a debt, includes the power to sue for it, and, upon payment, to make a proper release or discharge of the debtor."—Story on Agency, §102. Nor was it necessary that A. G. McNeel should have authority in writing to sign the receipt for his principals. The authority of an agent to sign an unsealed paper, or a written contract, need not be in writing, but may be by parol.—Story on Agency, §50.

If there were any possible doubt about the authority of the agent, still the account must be taken as settled from the acquiescence of the Plaintiff and Edmiston. The settlement was made in January, 1867, the balance paid and a statement of the whole matter sent to the Plaintiff and Edmiston by the agent, with a request that they should notify Baker if it was not satisfactory. In September, nine months afterwards, the Plaintiff saw Baker, and he made no objection to it, nor did Baker even hear any complaint about it until this suit was instituted, near two years after the settlement. There is not a word of excuse in the bill for this long delay, nor does the Plaintiff deny the facts or offer any reason for it in his deposition.

To establish a stated account as a bar, "it will be sufficient if the account has been rendered and acquiesced in for a considerable length of time." Among merchants it is looked upon as an allowance of an account current, if the merchant who receives it does not object to it in a second or third post."—1 Dan. Chy. (3d Am. Ed.) 690; Murray vs. Poland, 3 John. Chy. 569; Freeland vs. Herron, 7 Cranch. 147; Picket vs. Short, 2 Ves. 239, and 1 Story's Eq., Jur. §526.

It may be claimed that the settlement was not final, because there is some evidence tending to show that it was understood at the time, (which is contradicted by the receipt given,) that if any errors should be found in the settlement they were to be corrected. If it were conceded that such was the agreement, still it would be a bar to a bill for an account. "Courts of Equity will not open a settled account, where it has been signed, unless for fraud or errors *distinctly specified in the bill, and supported by evidence.* The expression of 'errors excepted,' will not prevent its being a settled account; nor will the allegation of general errors be enough; for specific errors must be pointed out, or it will be final."—Story's Eq. Pl. §800 and §251.

Having shown, as we think, that there had been a settlement of the partnership before the institution of this suit, the next enquiry is, can the Plaintiff entirely disregard and ignore that settlement, and bring his bill for an account?

"A plea of a stated account is a good bar to a bill for an account, for there is no rule more strictly adhered to in this Court, (equity,) than that where a defendant sets forth a stated account, he shall not be obliged to go upon a general one, because very often the opening of a stated account would unravel a perplexed affair, which might otherwise remain in the dark."—1 Dan. Chy. 689. "If there has been an account stated between the parties, it may be pleaded as a bar to both discovery and relief, or *may be set up by answer as a bar to relief.*"—Adams' Eq.

441, (226 ;) Weed *vs.* Small, 7 Paige, 593. "Upon like grounds, *a fortiori*, a settled account will be deemed conclusive between the parties, unless some fraud, mistake, omission, or inaccuracy is shown."—1 Story's Eq. Jur. §527. "And, in cases of settled accounts, the Court will not generally open the account ; but will, at most, only grant liberty to surcharge and falsify, unless in cases of apparent fraud."—Id. and Chambers *vs.* Goldwin, 8 Ves. 265. There is no mention, in the Plaintiff's bill, of either fraud, mistake, or inaccuracy ; in fact, he does not even notice the settlement, much less allege grounds for disregarding it. The record in this case strongly vindicates the wisdom of the rule, not allowing a bill to open a settled account, unless upon specific charges of fraud, mistake, &c. · For the Court will see, from the depositions, that all the Plaintiff attempted to do, was to establish errors in the settlement, and when he was met by the Defendant, in his attempt to impeach one item, he would leave that and resort to another, and so on indefinitely.—To such a proceeding there could be no limit ; and the Defendant could no more prepare to meet successfully the ever varying and successive attacks of the Plaintiff in such a process, then he could succeed in overtaking an *ignis fatuus*. We think, therefore, the authorities cited, when applied to the facts and pleadings in this case, are abundant to entitle the Appellant to a reversal of this cause. In case of a reversal upon the ground just considered, the next question which presents itself is, whether the Court shall dismiss the Plaintiff's bill, or allow him to amend, with leave to surcharge and falsify the settlement ?

We claim that the bill should be dismissed absolutely. First, because the amendment was not made at the proper time. While the Court will often allow amendments before the hearing, it rarely ever allows them, except as to parties, at the hearing, and only in very extreme cases after the hearing.—Pleasants *vs.* Logan, 4 H. & M. 489 ;

Shepherd *vs.* Merrill, 3 Johns. Chy. R. 423. If the replication has been filed to the answer several months, a motion to amend will be denied, unless the plaintiff shows why the matter to be introduced was not stated before.—Brown *vs.* Ricketts, 2 Johns. Chy. R. 425. SECOND, because the matter to be introduced by the amendment was known to the Plaintiff at the time he commenced his suit. Amendments can only be made for the introduction of matters which arose previous to the filing of the bill, but which were discovered by the plaintiff afterwards.—Stafford *vs.* Howlett &c., 1 Paige, 200; Whitmarsh *vs.* Campbell, 2 Paige, 76. THIRD, because a bill to surcharge and falsify the settlement, would make an entirely new suit.—A party under the privilege of amendment, shall not introduce matter which would constitute a new bill.—1 Dan. Chy. 410; Verplanck *vs.* M. Ins. Co., 1 Edw. Chy. R. 46; Lambert *vs.* Jones. 2 Patton and H., 144; Snead *vs.* McCoull, 12 How. 421; Shields *vs.* Barron, 17 How. 130-144; and Story's Eq. Pl. §884. And, FOURTH, because the case made by the Plaintiff's depositions in the record, if incorporated in a proper bill, would not entitle the Plaintiff to relief in a Court of Equity. The facts attempted to be proved neither establish fraud, mistakes, nor errors in the settlement, for which a Court of Equity could grant relief. Courts of Equity will not open a settled account, unless for fraud or errors distinctly specified in the bill, and supported by *conclusive proof.*—Story's Eq. Pl. §§251, 800; Chappedelaine *vs.* Decheneaux, 4 Cranch, 306; Shugart *vs.* Thompson, 10 Leigh, 434; and 2 Dan. Chy. 850.

The Appellant might confidently rest the case upon what has preceded, but as there are other assignments of error fatal to the success of the Appellee, we feel it our duty, as counsel, to consider them briefly in these notes.

The Court erred in rejecting the plea offered to the jurisdiction of the Court. No objection was made to the

1873.
January
Term.

McNeel,
v.
Baker et als.

merits of the plea ; but the Court rejected it because it had not been tendered at the proper time.   It is conceded that, ordinarily, a plea of this character cannot be admitted after decree *nisi ;* but, in this instance, the affidavit of the Defendant furnished a sufficient excuse for not having sooner filed the plea.   If the facts set forth in the affidavit were true, (and they must be so regarded, for they are not denied,) they would have been sufficient grounds for setting aside a decree in the cause and opening the cause *de novo.*   Fraud in a Court of Equity vitiates everything it touches, and, in this Court, no man is permitted to have an advantage from his own wrong. These are maxims which will not be controverted.   If, therefore, the matters alleged were sufficient to vitiate and set aside a solemn decree of the Court, *a fortiori,* they were sufficient to set aside the rules taken by the Clerk, and admit the plea.   At least, the Court should have issued a rule against the Plaintiff, or directed an issue to ascertain the truth of the matters contained in the affidavit, and, if established, then set aside the rules and admit the plea.

*Dennis* and *Skeen* for Appellees.

PAULL, Judge.

The bill in this case was filed in October, 1868, and alleges that a co-partnership was formed between the Plaintiff and the Defendants for the purpose of buying cattle in the counties of Greenbrier, Monroe, &c.; that by the terms of said contract the Defendant Baker was to furnish the money necessary to purchase said cattle, and to defray their expenses to market, and the Plaintiff and Defendant Edmiston were to purchase them and to drive them to Pennsylvania, and there deliver them over to said Baker, who was to sell them.   The profits after paying the purchase money and expenses were to be equally divided among the three.   The bill then avers that said Baker failed to furnish the money to pay for the cattle as he agreed to do, so that Plaintiff was compelled

to advance from his own private means the sum of $—— towards the purchase of said cattle; that large profits were made upon said cattle, which were kept by said Baker and not accounted for to the other partners; that upon a rough settlement said Baker owed to the Plaintiff about the sum of $1400, and that Defendant Edmiston, the other partner, owed him about $75. The bill then prays for an account of the partnership affairs, of its profits, and the amount due to the Plaintiff, and general relief. At a term of the Court held in April, 1869, the Defendant Baker appeared and offered to file a plea in abatement to the jurisdiction of the Court, accompanied with an affidavit, alleging false representations on the part of the Plaintiff, as his reason for not filing it sooner. This plea was rejected by the Court, and thereupon said Baker filed his answer. This answer admits that on the 12th of May, 1866, he did form a partnership with Plaintiff and Edmiston upon the terms and for the purposes set out in said bill. The answer then sets out the number of cattle purchased, with the aggregate cost thereof, as appeared from a statement furnished to him by the Plaintiff and Edmiston, which statement is filed as an exhibit with the answer. The answer further sets out the cost and expenses of bringing said cattle to market, the amount of the proceeds of sale, and the amount of nett profits derived from the operations of the business. The answer further alleges that full and detailed statements of all the sales, expenses, profits, and settlement of said partnership would appear upon three different papers, filed as exhibits; that these three last mentioned papers were each and all exhibited to Andrew G. McNeel, the agent of Complainant and said Edmiston, and a full settlement made with him of the entire partnership on the 7th day of January, 1867, as would appear from a receipt of the said A. G. McNeel, filed as an exhibit with the answer. The answer then denies that Respondent failed to furnish the money to pay for the cattle, and that he had not accounted for the

profits, but on the other hand that he had furnished the money, as he agreed to do, and had accounted for all the proceeds and profits of said cattle; that the whole concern had been fully settled up, and that he was not indebted in any manner to the Plaintiff.

To this answer there was a general replication. At the November term, 1868, the case was referred to a commissioner, to take state and report an account of the partnership affairs, and the indebtedness of any of the partners to each other. The commissioner proceeded to take the account, after taking, first, the evidence of such witnesses as were produced, and the depositions of others, and filed the same in Court, but at what time the record does not disclose. The report itself bears date on the 13th of June, 1870. Report shows the sum or balance of $39.80, due from Baker to the Plaintiff, and the sum of $401.95, to Edmiston. This report is excepted to by Defendant, Baker, as re-opening a stated or settled account. No exception is made on the part of the Plaintiff.

At the October term, 1870, the report was re-committed, with instructions to strike out an item of $290, with which, in the opinion of the Court, Defendant, Baker, had been erroneously charged, and to take further evidence in regard thereto, or any other question. A supplemental report is made, complying with the order of the Court, but by the introduction of one or two other items, the amounts reported as due from Baker to his co-partners respectively, is, within a few cents, the same as mentioned in first report. To this report, Defendant excepts. Supplemental report bears date September 20th, 1871. On the 12th day of December, 1871, Edmiston files his answer, admitting that the bill correctly states the terms of the partnership, but that he does not know how the accounts will stand on a fair and final settlement; he believes, however, that Baker would be indebted to Plaintiff and himself, in a large amount of money, and prays for an account, &c. On the 24th day of April, 1872, a final decree is entered confirming sup-

plemental report, and that Baker pay to the Plaintiff the sum of $39.46½, and to Edmiston, the sum of $401.61½, with interest, &c. And from these decrees, and orders the Defendant, Baker, takes his appeal to this Court. The first error assigned, is, the Court's rejecting the plea in abatement offered by Defendant, Baker. The Code provides, that no plea in abatement to the jurisdiction of the Court shall be received after, (among other things,) there has been a conditional judgment, or decree *nisi.* Ch. 125, § 16 of Code of West Va. This decree had been entered, and the plea could not therefore be received without violating the statute. The fact, that the affidavit accompanying it alleges that he, Baker, was prevented by false or fraudulent representations on the part of the Plaintiff from making it at the proper time, will make no difference, as no such questions could be enquired into in this collateral way.

The 2nd error assigned is the following: In not dismissing the Plaintiff's bill upon the proof, which clearly shows the fact that a final settlement of the matters set forth in the complaint, had been made and acquiesced in for nearly two years before suit was brought.

A proper determination of this exception will dispose of the merits of this appeal.

The object of the bill, and the state of the pleadings will be borne in mind. The bill seeks a settlement of partnership accounts, alleging that upon a rough settlement, there is due to the Plaintiff, from Defendant, Baker, about the sum of $1,400; and due to him from his other partner, Edmiston, about $75. Baker's answer denies all indebtedness to the Plaintiff, and on reference of the case to a commissioner, the Plaintiff is bound to establish his claim by competent proof. The evidence was taken, and two reports were made, each giving him less than $40, as the amount due to him from defendant, Baker, a very small fraction of the amount claimed in his bill; but he takes no exception to either report, but

21

on the contrary, a final decree for that amount; while nothing is reported as due to him from Edmiston. We may infer that he was satisfied that he could prove no other, or different, or greater amount. But the answer does not merely deny the Plaintiff's claim, but sets up the affirmative defence that a full settlement was made by himself of the entire partnership on the 7th day of January, 1867, with Andrew G. McNeel, the agent of the Plaintiff and said Edmiston, and takes his receipt for $9,293; the balance due (as recited in said receipt,) on 526 head of cattle belonging to Baker, McNeel, and Edmiston. This defence, if established, is conclusive of the case ; for the bill does not seek to surcharge or falsify a stated or settled account, alleging serious mistakes, fraud, or otherwise connected with the same, but simply asks a settlement of the original affairs of the partnership.

The first question then presented is this: was Andrew G. McNeel the agent of the Plaintiff and Edmiston, for the purpose of making a settlement with Baker of the partnership business?

The testimony of Andrew G. McNeel is taken three different times touching the matters in controversy, from which it appears that he is the son of the Plaintiff, and aided in purchasing and bringing the cattle to market, some of which he sold, and accounted, as he claims, for the money. In one deposition he says that he had no authority from his father and Edmiston to make a final settlement with Baker; that he went at their instance to Pennsylvania to get the proceeds of cattle sold, and yet unpaid by Baker; that he was directed to get the money from him—the balance on the cattle—and gave the receipt for $9,293, filed with Baker's answer—which amount he received. In another deposition he says, he had no authority from McNeel and Edmiston to settle the accounts, only to receive and bring home any money Baker might pay him for them.

Paul McNeel, the Plaintiff, gives his testimony, and

1873
January
Term.

McNeel,
v.
Baker et als.

in answer to a question by his attorney, as to what connection A. G. McNeel had with the matter, says his duty was to help all the partners alike; that he was a young man at the time, and not able to make out, or competent to settle, a large partnership transaction, and could not on his return explain the account, as made out by Baker and Phillips.

The other partner Edmiston is examined twice, but only says that A. G. McNeel was the agent of all, and knew that he could not explain the settlement made with Baker.

On the other side, Baker introduces the testimony of James M. Phillips, Howard Baker, and himself, all of whom testify that A. G. McNeel stated or represented to them, that his father, the Plaintiff, was unable to go to Pennsylvania, but that he had come by his authority, to make a settlement, and in his place; and that he had accounts, and memorandum books with him, copies of which had been previously furnished by mail to Baker. Their testimony as to A. G. McNeel's statement of his having come on with authority from his father to make a final settlement, is clear and explicit. A. G. McNeel, when asked if he had all the accounts of McNeel and Edmiston with him, &c., when going on to Pennsylvania, when the parties met, said the papers and accounts had been sent to Baker before he went, and were there when he got there.

In examining this evidence, a direct conflict appears between him and Aaron Baker, Howard Baker, and James M. Phillips, the latter testifying to their presence, when the alleged settlement was made, and to his statements and representations that he was authorized to make a final settlement by his father and Edmiston, while the materials, the papers and accounts, had been already forwarded, and were then in Baker's possession. It is certainly singular that, while the issue in this case involved directly this question of A. G. McNeel's agency,

the Plaintiff, while testifying, did not deny it, if the truth so warranted. He only says he was a young man, and not competent to settle an important account, &c.; but he does not speak of his age, or education, or mention any disqualifications. He is examined on different matters of account before the commissioner, and seems to speak with intelligence. Neither does the other party in interest here, Edmiston, when testifying, in any manner deny his agency. They certainly knew whether they had or had not conferred the authority, but such nevertheless is the character of their testimony. A. G. McNeel says he was authorized to collect the balance due from Baker, and his receipt specifies the amount received as *a balance*. He does not say the balance as Baker might determine it for himself, but the balance; which would seem to imply at least that he was authorized, in connection with Baker, to examine the papers to ascertain what that balance was. The great preponderance of the testimony is in favor of his being authorized to make a settlement of these matters, by Mc-Neel and Edmiston.

Was there a settlement made? Upon this question also, there is some conflict between A. G. McNeel and the witnesses Aaron Baker, Howard Baker, and James M. Phillips. The first admits that there was some examination of papers and accounts between himself and Baker, though stating that it was mainly conducted by Baker and the witness Phillips, and a balance finally named and paid over to him of more than $9,000; but that he did not regard it as a final settlement, nor did Baker claim it as such, but said there might be mistakes, and if any he would be willing to make it all right. He says, however, that Baker furnished him at the time with two papers, one of which was a balance sheet, and the other an account of the purchase and sale of cattle. Copies of these papers are in the record.

On the other hand Defendant Baker says there was a

full and final settlement made at this time; that A. G. McNeel produced his papers, was present all the time that he was himself; that witness Phillips aided them in making up the account among the partners; that A. G. McNeel examined the papers; that a settlement was made, and he expressed himself satisfied with the result; that he paid him the money, and claimed at the time that this was a final settlement. To the same effect is the testimony of Howard Baker, and James M. Phillips: the latter saying that they went over all the accounts, giving McNeel credit for every item of expense he claimed, and that he appeared to be perfectly satisfied with the settlement. The testimony of these three witnesses, unimpeached directly or otherwise, must be regarded as establishing the fact that a final settlemaot was made; especially so when taken in connection with the further fact, that no exception was taken by Mc-Neel and Edmiston to the papers sent them at the time, including the balance sheet; nor any notice or letter expressing any dissatisfaction with the settlement made or sent to Baker, or any statement of any kind, so far as A. G. McNeel knew. On the contrary, nothing more is heard upon this matter, until this suit was brought, about a year and eight months after the alleged settlement was made. What, then, is the legal effect of the settlement thus made between the parties is the next enquiry?

In Story's Equity Pleadings, §798, it is said, "a stated account properly exists only where accounts have been examined, and the balance admitted as the true balance between the parties, without having been paid. When the balance thus admitted is paid, the account is deemed a settled account. Each of these, and *a fortiori* a settled account, may be pleaded in bar to a bill for an account. But the defendant who pleads a stated account must show that it was in writing, and the balance likewise in writing; or at least it must set forth what

the balance was, and that the settlement was final." These requisites have been met in the case before us. A stated account, and a settled account, may also be set up by way of defence in an answer. Endo *vs.* Coleham, 1 Younge R. 306. So also Adams Equity, top page 485. " If, therefore, there has been an account stated between the parties, it may be pleaded as a bar to both discovery and relief, or may be set by answer as a bar to relief." So also Story's Equity, §523, and the cases there cited. But this doctrine is well established, and needs no further proof.

What now shall be done with the bill? In the case of Weed *vs.* Smull, 7 Paige, Ch. Re., 573, it was held, " upon a general bill for an account, if the defendant sets up a stated account in bar, the complainant will not be permitted to show mistakes or errors in such account; but he must amend his bill, as the settled account is *prima facie* a bar to the suit, until specific errors therein are assigned." This course was not taken in the case before us, but the Plaintiff was allowed to take an account of all matters in dispute, without reference to the settlement. Still even in cases of stated or settled accounts between parties, a bill will be entertained to correct manifest errors, mistakes, or omissions specified, and clearly proved—but the enquiry does not seem to be enlarged beyond the items of error, or mistake, or omission, &c., indicated in the bill. In 7 John. Ch. R., 69, Nourse *vs.* Prime and others, it was held, " when a party seeks to open a settled account by falsifying any particular item, he must in his bill state precisely the real objection; otherwise he cannot make it at the hearing."—See Willis *vs.* Jernegan, 2 Atkyns., 249, and Murray *vs.* Toland, 3 John., Ch. R., 569. In Vernon *vs.* Vawdry, 2 Atkyns., 119, it was said, " if there are only mistakes or omissions in a stated account the party objecting shall be allowed no more than to surcharge and falsify; otherwise in cases of fraud—so also Consequa *vs.* Fanning, 3 John.

1873.
January
Term.

McNeel,
v.
Baker et als.

Ch. R., 587; Freeland *vs.* Cocke's reps., 3 Munf., 352, and Shugart's Adm'r *vs.* Thompson's Adm'r, 10 Leigh, 434. Upon the principles and rules of Equity, as presented in these cases, there being no fraud disclosed in any way by the evidence, the Plaintiff will be granted leave to amend his bill, and to surcharge and falsify the stated or settled account heretofore made between the parties, by pointing out or indicating specifically any items of error, mistake, or omission existing therein.

The decree of the Circuit Court rendered on the 24th day of April, 1872, is reversed, with costs to the Appellant, Aaron Baker, and this cause is remanded to the Court below, with leave to the Plaintiff to amend his bill, and the case is to be proceeded in, according to the principles herein settled.

HAYMOND, President, and MOORE, Judge, concur in the foregoing opinion.