CHARLESTON

Kinsey v. Carr *et al.*

Submitted June 12, 1906.    Decided November 20, 1906.

1. Trial by Court.

    When a case is tried by a court in lieu of a jury, its finding will not be disturbed by this Court unless it is against the plain and decided preponderance of the evidence, or wholly without evidence to support it.  (p. 450.)

2. Evidence—*Plea of Payment.*

    The plea of payment is sustained by the evidence, and the court committed no error in finding for the defendants.  (p. 455.)

Error to Circuit Court, Wood County.

Action in *assumpsit* by T. S. Kinsey against Wm. M. Carr *et al.* Judgment for defendants and plaintiff brings. error.

*Affirmed.*

H. P. Camden and W. G. Peterkin, for plaintiff in error.

Smith D. Turner, for defendants in error.

Sanders, Judge:

The plaintiff, T. S. Kinsey, brought an action of *assumpsit* in the circuit court of Wood county, against W. M. Carr,

A. S. Carr, Percy H. Carr, Wm. B. Farris and others, partners as the Carr Oil Company.

By consent of the parties, the action was abated as to all of the defendants except the three Carrs, who plead the general issue, and payment. The case was upon the joint motion of the plaintiff and defendants referred to a commissioner to take and state an account between the parties. Under the order of reference the commissioner reported adversely to the plaintiff, to which report he excepted, but the court overruled the exception and entered judgment for the defendants, and this judgment is now here for review on writ of error.

The commissioner finds and reports from the evidence that the plaintiff is estopped to recover the amount claimed by him, and it is argued by counsel for the plaintiff that the commissioner had no right to pass upon the question as to whether or not the correct balance found by him was due or not due to plaintiff, because of the estoppel set up by the defendants, but that the sole purpose of the reference was to take and state an account between the parties. As to whether or not this contention is tenable we find that it is unnecessary to decide, because by agreement of parties the case was submitted to the court in lieu of a jury, upon the commissioner's report, the exceptions of the plaintiff thereto, upon the pleadings in the case, and the evidence returned by the commissioner in support of his report. Therefore, granting that the commissioner did not file such report as was required by the order of reference and by section 10 of chapter 129 of the Code, section 3921, Annotated Code 1906, yet if the evidence filed with the report, and upon which the case was heard, is sufficcient to support the judgment, we could not reverse because the commissioner passed upon this evidence and found that the plaintiff was estopped. The evidence taken by the commissioner and upon which he bases his report was returned and filed with his report, and was, by agreement, considered by the court. The report of the commissioner as to such matters properly referred to him, and upon which he could properly report, is only *prima facie* correct. It may be overthrown by evidence, and when all the evidence is in, it is for the court to determine whether or not it is correct. When a commissioner

does not report in obedience to the order of reference or as provided by the statute, not deciding, however, that the commissioner has not done so, the court could recommit the case to him. But where it is not recommitted, but submitted on the report and the evidence returned with it, the court will look to the evidence, together with the report, and decide the right of the case therefrom. And again, the plaintiff did not except to the report on the ground that the commissioner did not obey the order, or that he reported conclusions of law and passed upon conflicting evidence, but seeks to raise this question here for the first time.

This brings us to the question as to whether or not the judgment is supported by the evidence. The evidence is somewhat conflicting, but it will not be necessary to point out wherein this is so, because we are, upon a review of the judgment, under the rules of law, required to disregard all the evidence which is in conflict with that which goes to establish the contention of the defendants, unless such conflicting evidence clearly and plainly preponderates. The same rule applies here as that by which a demurrer to the evidence is tested. Before we can reverse the finding of the lower court, the judgment must be without sufficient evidence to support it, or plainly and manifestly against the decided weight and preponderance of the evidence. Therefore, if we find there is sufficient evidence to support the judgment, and that the material conflicting evidence does not plainly preponderate, we must sustain the court's findings. *Buck* v. *Newberry*, 55 W. Va. 681; *Barrett* v. *Raleigh C. & C. Co.*, 55 W. Va. 395; *State* v. *Sullivan*, 55 W. Va. 597; *Fulton* v. *Crosby & Beckley Co.*, 57 W. Va. 91. Numerous other cases might be cited to the same effect, but it is deemed unnecessary to do so.

We will give briefly the material facts which the court below could have found from the evidence.

During the years 1897 and 1898 the Carr Oil Company, owning and operating certain leaseholds for oil and gas near Cornwallis, in Ritchie county, engaged T. S. Kinsey to drill for it certain oil wells. Kinsey, at the same time, had a contract with Stuart & Young, of Chicago, for drilling on the Wells farm, in Ritchie county. Stuart & Young had

a contract with the Carr Oil Company by which they were to finance that company, so that for all the work which Kinsey did under these two contracts, which were separate and distinct, he was paid by Stuart & Young, and they paid him for all the work done by him upon the Wells farm. Stewart & Young owned a three-eighths interest in the Carr Oil Company.

In 1898 Kinsey finished his work at Cornwallis, at which time the Carr Oil Company was indebted to him, on account of work done at that point, between twelve and thirteen thousand dollars. In July of that year Kinsey entered into a contract with A. S. and W. M. Carr, by which he was to drill certain oil wells at Sugar Grove, Ohio. This contract was later assumed by Stuart & Young, who were to pay Kinsey for the work done under it. At this time Kinsey had outstanding two notes for $500 each, payable to Ireland & Hughes, of Pittsburg, Pa., one due July 25th and the other August 25th, 1898. Prior to the time of leaving Cornwallis, Kinsey had spoken to W. M. Carr relative to these notes; saying that the Carr Oil Company must take care of them. He also told Carr that he must have one thousand dollars. Carr told him to write to the Company in Chicago, and that doubtless the matter would be attended to. Kinsey did as he was directed, and on Sept. 2 received from Stuart & Young a check for one thousand dollars; also, on the same date, he received from them a letter stating that the two notes had been taken care of. In this letter no direction was given as to how the money should be applied. Kinsey entered a credit on his books to the Carr Oil Company for the first five hundred dollar note, but made no entry as to the other note or the one thousand dollars cash item. He says he intended that the whole amount should be entered as a credit to the Carr Oil Company, and he thought this had been done. Early in the month of September Kinsey told W. M. Carr that the Carr Oil Company had taken care of the two notes and had also paid him one thousand dollars cash.

On the 28th day of September, 1898, Stuart & Young, Wm. B. Farris, and A. S. and W. M. Carr entered into a contract by which the Carrs and Farris bought the interest of Stuart & Young in the Carr Oil Company, subject to the

debts of said Company, and for themselves and their associaciates, released Stuart & Young of all claims which they had against them. On September 30th, following, Kinsey received a letter from Stuart & Young, stating that the two thousand dollars—one thousand dollars paid to Ireland & Hughes and the one thousand dollars cash—were to be credited to their acount. Thereupon Kinsey erased the five hundred dollar credit which he had given to the Carr Oil Company, and later informed the Carrs that he had received directions from Stuart & Young as to how the two thousand dollars should be applied, and that the amount was not a credit on the Carr Oil Company's account.

The direction of Stuart & Young, made to Kinsey on September 30th, was to apply the two thousand dollars as a credit on the work done at Sugar Grove.    By the terms of contract with Kinsey, they were not required to pay for wells until they were completed. At the time that Stuart & Young paid these amounts, early in September, there were no wells completed on the Sugar Grove work—hence no money was really due Kinsey on that work at that time.    It is the custom among oil people that wells are never paid for until completed.

A dispute arose as to whether or not the two thousand dollars had been credited by Kinsey upon the Carr Oil Company's account.   In 1901, by virtue of a settlement between them, the Carrs paid to Kinsey all that was found due to him from the Carr Oil Company, with the exception that no agreement was reached as to the item of two thousand dollars, and the parties not coming to any conclusion in regard to it, this action was instituted for its recovery.

While the court overruled the exceptions of the plaintiff to the commissioner's report, which found that the plaintiff was estopped, yet it does not appear upon what ground the court predicated its decision—whether upon the ground of estoppel or upon some other ground.   Nor is it material what reasons it gave for its decision, if the judgment is supported by the evidence.    The court may have given the wrong reason, still if the plaintiff, from all the evidence, was not entitled to recover, the judgment will not be reversed simply because the decision was put upon the ground of estop-

pel when it appears there was no estoppel, when there is another sufficient reason upon which the judgment can be sustained.   *Lee* v. *Patton*, 50 W. Va. 20; *Ballard* v. *Chewning*, 49 W. Va. 508.

We do not think the evidence supports the view of the commissioner wherein he reports that the plaintiff is estopped, because the facts show payment, and if so, there can be no estoppel.   The work on the Wells farm had been completed and paid for, and the wells at Sugar Grove had not been completed; and, according to the understanding and agreement between the parties, they were not to be paid for until completed.   Therefore, at the time Stuart & Young sent Kinsey the one thousand dollars, and notified him that the Ireland & Hughes notes had been taken care of, there was nothing due from them to Kinsey, and, in fact, nothing was due to Kinsey on account of any of the work except the work at Cornwallis.   There being nothing due from Stuart & Young to the plaintiff at that time, it certainly does not seem reasonable that they would advance to him this sum without being requested to do so.   If it is said that there was such request, it cannot be sustained from the evidence.   The plaintiff, before that time, called upon W. M. Carr and stated that he wanted the Ireland & Hughes notes taken care of, and that he wanted one thousand dollars.   Carr requested him to write to the Carr Oil Company in Chicago, and stated that no doubt it would take care of the notes and pay him the desired sum of money.   Following up this conversation, Kinsey did write to the Carr Oil Company, requesting it to take care of the notes and to send him one thousand dollars, and in obedience to this request, Stuart & Young, who received the letter written to the Carr Oil Company, sent the one thousand dollars, and notified Kinsey that the notes had been taken care of.   It is true the check was signed by Stewart & Young, but this is not significant, because the agreement between the Carr Oil Company and Stuart and Young was that Stuart & Young were to receive the output of the wells operated by that Company, and to pay all of its bills.   So, whether they sent their individual check, or the check of the Carr Oil Company, is immaterial, because at this time they owed the plaintiff nothing, and the request was not made to them to advance any sum of money

on account of the Sugar Grove wells, but the request was directed to the Carr Oil Company, which at that time owed the plaintiff. In their letter to Kinsey, Stuart & Young did not claim, nor did they in any way intimate, that they were advancing this money on their individual account, and inasmuch as the request was to the Carr Oil Company, we certainly cannot assume that this was on account of an individual transaction between them and Kinsey, but it is perfectly patent that it was on account of the transaction between the Carr Oil Company and Kinsey.

This request having been made, the money having been sent, the notes having been taken care of in compliance with the request, and Kinsey having applied it to the credit of the Carr Oil Company, as he said it was his intention to do when he made the request, is strong evidence in payment. During the course of Kinsey's examination as a witness, it developed that he had only actually entered upon his books to the Carr Oil Company's credit, one of the five hundred dollar notes, but he told the Carrs that he had credited the entire amount to their account. And it was not until after the Carr Oil Company bought the interest of Stuart & Young in that Company, subject to its debts, and released Stuart & Young from all liability on account of any of the transactions, that the Carr Oil Company found that Kinsey was claiming anything on account of this indebtedness. Stuart & Young said nothing as to where this money should be applied until after the consummation of the agreement aforesaid, and they then notified Kinsey that it should be applied upon the Sugar Grove wells, and it was after this that the plaintiff claimed that he changed his credit from the Carr Oil Company to Stuart & Young. This he could not do. As we have seen, the payment of the Ireland & Hughes notes and of this sum of money by Stuart & Young, for the Carr Oil Company, upon the request of Kinsey, constituted a complete payment, and a discharge of the obligation of the Carr Oil Company to the plaintiff.

It is said that there is nothing to show that the money was that of the Carr Oil Company. Whose money was it? Application was made to the Carr Oil Company to pay it, and it was paid by the parties who had been appointed to do so,

and there is nothing to show that it was the money of any other person. And even though there is no positive proof that it was the money of the Carr Oil Company, we should presume it to be so. But suppose it was the money of Stuart & Young; they agreed to pay the bills of the Carr Oil Company, and they, upon request, applied this money to the payment of the debt due from the Carr Oil Company to Kinsey, which thereby discharged the obligation.

The defendants cross-assign error, and insist that the lower court, instead of merely finding against the plaintiff, should have given them judgment against the plaintiff for the amount of the sets-off. A sufficient answer to this assignment is that the evidence abundantly shows that all the matters between the parties had been settled, except the sum sought to be recovered in this action.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Affirmed.*

POFFENBARGER, JUDGE, (*dissenting*):

For the following reasons, I am unable to concur in the conclusion to which my associates have come. The original indebtedness undisputed, the burden of proof, on the issue of payment, rests upon the defendant, the Carr Oil Company. Three members of the firm have testified in the case, without even indicating, with any degree of certainty, that the company furnished a dollar of the two thousand dollars which they claim to have paid. They do not swear, or show, that either of the two five hundred dollar notes in question was paid with their money by Stuart and Young as their agents, nor that the one thousand dollar check was drawn upon, or paid out of, Carr Oil Company funds. The defense of payment and the decision of this Court proceed upon the assumption of a relation of agency between the Carr Oil Company as principal and Stuart and Young as agents. If the latter paid said sum of two thousand dollars as such agents, the act of payment was the act of the principal, and the documentary evidence of that act, the two notes and the check, are in the custody of the defendant. If they are not in their actual posssession, they must be in the

possession of their agents, which, in law, amounts to the same thing. Hence, there is no reason, nor is any excuse set up, for their non-production. They afford the best evidence of payment, and if they had been introduced, along with the oral testimony in this case, they would make it conclusive in favor of the defendant, for no court could permit a finding contrary to that. The most that is claimed for the evidence without them is, that it makes a doubtful case, one that would warrant a finding either way. This might sustain the finding of the circuit court, if it were not disclosed that this documentary evidence, if it exists, as it must, if this judgment is right, were not in the possession of the defendant. Their failure to produce it, without any excuse for so doing, raises a strong presumption that they do not have it, and, therefore, that they did not make the payment. They do not go so far in their testimony as to say that they have, or ever had any of these papers. They do not assert that the two notes were ever delivered to Kinsey. Kinsey says in substance that he never had them, but only that he had been informed that they had been paid. Of course he has not the check for that was returned to the drawer thereof. Can it be assumed that the Carr Oil Company would risk a case involving two thousand dollars on remote circumstantial, equivocal and inconclusive evidence, if they had in their possession the written evidence of these payments? This Court has several times decided that failure of a party to produce, in a case in which the evidence is doubtful, conclusive evidence in its favor, when he has it, or claims to have it, within his power, conclusively establishes the fact that it will not prove what he says it will, or that he does not have it. *Webb* v. *Bailey*, 41 W. Va. 463; *Union Trust Co.* v. *McClellan*, 40 W. Va. 405; *Binder* v. *Martin*, 28 W. Va. 775; *Hefflebower* v. *Detrick*, 27 W. Va. 16; *Knight* v. *Capito*, 23 W. Va. 639; *Wheeling* v. *Hawley*, 18 W. Va. 472.

It seems to me that, if the doctrine of these cases is sound, the principle they enunciate ought to be applied and enforced here; for, of all the cases that have come under my observation, this is one of the most inconclusive as regards the evidence upon which the judgment stands. The witnesses are allowed to stand off and testify at long range and introduce

testimony to mere circumstances for the purpose of establishing a thing, which, if it exists, is within their personal knowledge. They must know whether their money paid that two thousand dollars, and yet they do not swear that it did, and the court excuses them from doing so. For aught that they have said in this case, they might go on the witness stand in an action brought by Kinsey against Stuart and Young, and testify that Stuart and Young paid the money on account of their own debt and not on account of the Carr Oil Company debt. If they should do that, there would not be the slightest contradiction in terms between their testimony in the two cases. It does seem to me that the Court ought to withhold a decision in their favor at least until they put their oaths behind their claim. That, they have not done in any direct or positive manner. For my part, if they had done so, I should compel them to go further and produce the documentary evidence which must be in their possession, if their claim is well founded. They say Stuart and Young were their agents, and, as such, paid the money out of their funds. Stuart and Young took the product of their wells, sold the oil and applied the proceeds in the discharge of their obligations. Is it conceivable that in handling these large amounts of money, Stuart and Young, acting as agents, knowing they would be called upon for a settlement in which they would be charged with all the oil received and sold, and credited with the amount disbursed on account of the debts of their principal, did not preserve the written evidence of their disbursement, and that a settlement was made between them and their principal without surrendering such instrument as the two notes which it was said were thus taken up? They do not say these instruments have been lost or destroyed, nor that their agents failed or refused to deliver them over to them on the settlement, nor do they produce their books and show that they were charged with these notes, or gave credit for them to Stuart and Young in their settlement with them. They do not even swear that their books show any such fact. Furthermore, they do not produce Stuart and Young, or either of them, the men who made the payment, and who must know out of whose funds they were made, to prove the claim of payment, nor show that the testimony of these

men cannot be had. Their failure to produce them is, under our decisions, conclusive evidence that they would testify against them.    See cases above cited.  In this way, the Court has before it the equivalent of the direct and positive evidence of Stuart and Young to the effect that these payments were not made out of the funds of the Carr Oil Company, as against mere remote circumstances, from which the Court is asked to infer a thing which the parties will not swear to as a fact.    The worthlessness of such testimony was declared by this Court only a short time ago in *Stout* v. *Sands*, 56 W. Va. 663, 669, 670.

The circumstance which is regarded as the strongest pillar of this decison is that there was nothing actually due from Stuart and Young at the time these payments were made to which they could have been applied.    This, the Court makes virtually conclusive against Kinsey.  In doing so, I think, it ignores some other very important circumstances disclosed by the evidence.  At that time, the Carr Oil Company owed Kinsey, according to his statement, about thirteen thousand dollars, certainly not less than nine or ten thousand dollars, and he had completed all the work that he had contracted to do for the Carr Oil Company. The work was completed and the money all past due and bearing interest.    The claim of payment proceeds upon the theory that the Carr Oil Company had funds in the hands of Stuart and Young with which to pay that indebtedness, or at least two thousand dollars of it, and that it was paid out of those funds.    It is very improbable that, with ample funds at their command, belonging to their principal, Stuart and Young would allow this indebtedness to climb up to thirteen thousand dollars and pay interest on it, or that the Carr Oil Company would have permitted any such thing. Suddenly Kinsey made a demand for two thousand dollars. He was then engaged on an extensive contract for Stuart and Young, at Sugar Grove, Ohio.    Although nothing was technically due him on that work, he had two wells almost completed, one of which came in on the 8th day of September and the other on the 15th.    It was very important to Stuart and Young that this work go on and it would not be a violent presumption to say that, in order to save Kinsey from embarrassment, and enable him to proceed with their

work, they advanced two thousand dollars on account of their own work, the Carr Oil Company not having sufficient funds to pay that amount. Certain it is that they paid the two notes and sent the check without informing Kinsey as to whose money it was, and also that the check sent was *prima facie* not drawn upon the Carr Oil Company fuuds. It was Stuart and Young's check. Supposing it was the Carr Oil Company's, Kinsey told one of the Carrs that he had placed it to the credit of that company. Later, Stuart and Young sent Kinsey a statement, crediting him with some thirty-eight hundred dollars for drilling two wells and charging him with the two thousand dollars in controversy here, enclosed a check for the balance and asked Kinsey to sign and return the voucher, which he did, retaining the check. Kinsey had no means of knowing whose money he had received. Nor could he have known that the Carr Oil Company had funds in the hands of Stuart and Young to pay the amount sent him, nor was he bound to presume that it was not the money of Stuart and Young, merely because nothing was then actually and technically due him from them. Hence, the circumstance is not conclusive nor is it, in my opinion, entitled to the weight given it.

It has been suggested that because Stuart and Young were agents of the Carr Oil Company and Kinsey had knowledge of that fact, the application which the latter made of the two thousand dollar payment could not be changed by their joint act, for the change was in the personal interest of the agents and against the interest of their principal. This position would be tenable, if it appeared that Kinsey knew the money, which he had received, was the money of the Carr Oil Company. He was bound to know that an agent could not appropriate to his own use the funds of his principal, or pay his own debt with them, and that he could not participate in any such transaction. But he did not know, nor did he have any means of knowing, that the fund in question was the property of the principal. For aught that he knew or could know, that money was the property of the agents themselves, with which they could do what they pleased. They had not been parties to the credit given to the Carr Oil Company, nor does it appear

that they knew it had been given.    Their letter did not ask Kinsey to change any credit, and there was nothing inconsistent on their part, in taking credit for that payment themselves, so far as Kinsey knew, or so far as the evidence in this case discloses. They dealt with him in two capacities, as contractors with him, and as agents to the Carr Oil Company, with whom he had another contract.    He did not know that they had sold out to the Carrs, and terminated the agency.    As to him the relation of agency continued.    Clark & Skyles, Agency, section 173b, pp. 414–417..    In which capacity they had sent the money he did not know and they had authority to bind their principal.

If the two thousand dollars was the money of Stuart and Young and not the money of the Carr Oil Company, then it is clear that they did nothing inconsistent, and that Kinsey could consent to the change of credit.    If no relation of agency existed, then the title to the fund was indisputably in Stuart and Young and they could direct the application of the payment.    Kinsey could not apply it on anybody's debt except that of Stuart and Young, without their direction, and as he had applied it without any direction, he could not have resisted the demand for an alteration thereof,    He was bound to accede to the demand that it be credited on Stuart and Young's debt.

The finding of the commissioner and the decision of the circuit court in favor of the Carr Oil Company seem to have been based upon the theory of an estoppel.    Enough of the evidence has been stated to indicate that there is no estoppel.    It is true that the Carrs bought from Stuart and Young, on the 28th day of September, 1898, their interest in that co-partnership, and, probably true that, prior to that time, Kinsey had told one of the Carrs that he had given the Carr Oil Company credit for the two thousand dollars.    They claim that he thereby misled them into the purchase of the Stuart and Young interest..    In other words, they say that, if they had not supposed this two thousand dollars had been paid on the indebtedness of the Carr Oil Company to Kinsey, they would not, or might not, have bought the interest of Stuart and Young..    But there is not a word of testimony to the effect that Kinsey knew, had any reason to know or suspect, or could have known, that the

Carrs intended to buy out Stuart and Young. Therefore, he made the representation without any intention to mislead the Carrs to their injury and without any reason to suspect, or means of knowing, that it would so mislead them. Moreover, as has already been shown, he did not know, and could not have known, whether the money he had received was properly credited, or could be properly credited, to the Carr Oil Company. Furthermore, the representation could not have injured the Carrs, if they had exercised the most ordinary prudence and care in effecting their deal with Stuart and Young. The means of knowledge was right at their hands. If it had been paid, their own books must have shown the fact, and if it had not been paid, their books and their papers, in the hands of their agents, Stuart and Young, showed that fact. Therefore, practically all of the essential elements and ingredients of an estoppel are lacking. "In order to constitute an equitable estoppel, there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied on or acted upon it to his prejudice." 16 Cyc. 726. "Negligent, as distinguished from intentionally fraudulent, misrepresentations, may operate as an estoppel. On the other hand, ordinary, casual declarations or admissions, not made for the purpose of inducing any specific action, and on the faith of which no one has been misled, are not conclusive in their character and are entitled to have only such weight attached to them as under all the circumstances they may fairly deserve." *Id.* 728.

I admit that in order to overthrow the decision of the court below on the issue of payment, we must be able to see that it is contrary to a decided preponderance of evidence; and I am convinced, for reasons stated, that it is not only against such preponderance, but almost wholly without evidence to sustain it. Men ought not to be allowed to establish, by mere inference, from remote and isolated circumstances, claims of title which they are un-

willing to assert upon their oaths, when the court can clearly
see that the truth or falsity of that claim is within their
personal knowledge, and documentary thereof within their
control but withheld.