# CHARLESTON.

HOOVER-DIMELING LUMBER CO. v. NEILL.

Submitted January 18, 1916. Decided January 25, 1916.

1. SET-OFF AND COUNTERCLAIM—*Action for Debt—Account Acquired After Commencement of Action.*

In an action for a debt, defendant may at the trial offer and have allowed against such debt any payment or set-off which is so described in his plea or in his account filed therewith before the trial as to give notice of its nature, whether he acquired the account before or since the commencement of the action. (p. 476).

2. ACCOUNT STATED—*What Constitutes—Agreed Account—Promise to Pay Balance.*

Generally, where persons who have had previous transactions of a monetary character agree that the account representing the transactions and the balance shown are correct, and the debtor expressly or impliedly promises to pay such balance, the account thereby becomes an account stated. (p. 473).

3. SAME—*Estoppel—Presumption of Accuracy—Rebuttal—Burden of Proof.*

An account stated does not create an estoppel; and, while it affords presumptive evidence of the accuracy and correctness of the charges therein stated, such presumption may be rebutted by showing fraud, mistake or error in its execution or procurement; unless the position of the opposite party has been altered to his prejudice. And the burden of proof rests on him who challenges the verity of such account. (p. 475).

4. SAME—*Account Made by Commissioner Under Order of Reference—Effect as Evidence.*

An account stated by a commissioner under an order of reference entered in an action at law, while not conclusive against the parties,

will be treated as prima facie correct; and on him who challenges its accuracy or justness devolves the duty of showing it to be unjust or inaccurate.   (p. 475).

5.  INTEREST—*Allowance—Unliquidated Claim.*
    Ordinarily, interest will not be allowed on an unliquidated account or claim, except from the time the amount due is ascertained judicially or by the act of the parties.   (p. 478).

Error to Circuit Court, Randolph County.

Action by the Hoover-Dimeling Lumber Company, composed of E. J. Hoover and John Dimeling, partners, against A. D. Neill.   Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Talbott & Hoover,* for plaintiff in error.

*Samuel T. Spears* and *Andrew Price,* for defendant in error.

LYNCH, JUDGE:

In an action of assumpsit brought to recover of A. D. Neill, sole defendant, a balance by plaintiffs, John Dimeling and E. J. Hoover, partners trading as Hoover-Dimeling Lumber Company, Limited, claimed to be due them upon a contract of sale of real and personal property to defendant and A. Gilfillan (since deceased), a reference was ordered to state an account between the parties, pursuant to §10, ch. 129, Code 1913, they agreeing thereto.   The account so stated and reported by the commissioner showed a balance of $7082.12 due defendant, and for this amount with interest judgment was rendered accordingly; and plaintiffs brought the case before us for review on writ of error.

The cause of action arose out of a contract dated March 31, 1906, whereby Hoover and Dimeling, as owners, sold to Gilfillan and Neill all the timber lands therein mentioned and the lumber business conducted by plaintiffs thereon, together with the fixtures, contracts, easements, rights and privileges unto said premises or business belonging or in anywise appertaining, as they stood on February 1, 1906, or as had since accrued thereunto.   On that date the property was to be clear and free of any debts or charges due from the grantors other than the deferred purchase money notes and pay-

ments listed and described in the agreement, with the provision that any balance due on account of the conduct of the business subsequent to February 1, 1906, should be ascertained upon final settlement and paid accordingly. The contract contained other covenants and conditions not material upon the issues.

Of the six contracts so assigned, only one need be noted. It was a verbal contract between Hoover-Dimeling Lumber Company and W. J. Cox ''relative to stocking of logs, the terms and specifications of which'', according to the recitals of the sale agreement, then were known by all the parties thereto.

As to the several assigned agreements, the reciprocal provisions were that the vendors conveyed all the rights possessed by them therein, and the purchasers assumed the obligations thereby imposed on the vendors. There were two verbal stocking contracts between plaintiffs and Cox at that time, distinguished and known as the 1905 and 1906 contracts. Of these it seems reasonably certain the first or 1905 Cox contract is the only one involved in this action; for so far as otherwise appears, the contract for the next year was to be and virtually has been fully performed and all matters arising out of it settled and adjusted by the purchasers and Cox. Plaintiffs were relieved from any responsibility as to it. That Gilfillan and Neill before the institution of this action had paid all the consideration directly payable to plaintiffs under the terms of the contract, aggregating several hundred thousand dollars, except the $4837.95, the amount of the original bill of particulars filed with the declaration, apparently is conceded. This sum plaintiffs claim the right to recover as part of a balance due them on an account stated as of March 20, 1906, after deducting a note of $7000 since paid to them. Whether such unpaid balance was retained by the purchasers, as they contend, to cover the cost of completing the 1905 Cox contract, then only partially performed; or whether that sum was part of the consideration for the sale to Gilfillan and Neill, to be paid without regard to the Cox contract; and whether plaintiffs paid Cox for the services performed by him in completing the same, are questions as to which much of the conflicting testimony taken before the commissioner and by him returned as part of his report relates.

His findings, adverse to the contentions of the plaintiffs as regards these inquiries, based on such testimony, the trial court, hearing the case in lieu of a jury by agreement of the parties, approved and entered judgment thereon.

Was the account of March 20, 1906, an account stated, within the legal meaning of that term? That the answer to this interrogatory may more readily be comprehended and its significance and scope understood, it is necessary to note that, although the purchasers acquired the property and business as of February 1, 1906, they did not personally assume the control and management thereof until April 10 of that year; and that, by some understanding or agreement between them and plaintiffs the purport and terms of which are not fully disclosed, the Hoover-Dimeling Lumber Company continued to conduct the business of manufacturing timber into lumber and marketing the product in the same manner and to the same extent as it had done prior to February 1, 1906. They collected the proceeds derived from such operations, paid all the expenses thereof, and performed such other services and functions as are incidental to the management and conduct of enterprises of that character. They undertook to account therefor to the purchasers as of the date the latter entered into active control of the property and business purchased. By an amendment, plaintiffs enlarged the original bill of particulars so as to include the items claimed by them as charges against the defendant to that date.

As to these additional items, the account of course did not fall within the meaning of a stated account. To constitute an account stated, there must have been a settlement satisfactory to the parties interested, and concurrence by them in the result thereof, and a promise by the debtor express or implied to pay the balance so ascertained to be due. The meeting of minds is as essential to the existence of an account stated as such concurrence is in any other agreement. Both must assent to the correctness of the account and the balance due. Such we find to be the essential prerequisites of an account stated. *Robertson* v. *Wright*, 17 Gratt. 554; *McNeel* v. *Baker*, 6 W. Va. 165; *McCarty* v. *Chalfant*, 14 W. Va. 531; *McGraw* v. *Bank*, 64 W. Va. 510; *Camp* v. *Wilson*, 97 Va. 265, 274.

As defined in 1 Rul. Cas. Law 207, an account stated is "an

account which has been rendered by one to another, containing the balance which is alleged to be due, which balance is assented to or admitted to be a correct account of the debt it represents as due from the debtor". Or, as defined by 1 Corpus Juris 678, "an account stated is an agreement, between parties who have had previous transactions of a monetary character, that all items of the account representing such transactions and the balance struck are correct, together with a 'promise express or implied for the payment of such balance".

Viewed only in the light of plaintiff's testimony, the account sued on may be an account stated within the definitions stated by these authorities. The witnesses introduced by them testify that defendant examined each of the items constituting the account and consented to the correctness of the balance ascertained. If that be true, thence arose an implied promise to pay it. But the evidence to the contrary renders doubtful the question whether either Gilfillan or Neill intended or understood the account to have the effect of an account stated, or that it justified the inference or presumption that they promised to pay such balance. Neill was not present when the account was prepared, if his testimony is to be taken as true, though Stouck, plaintiff's bookkeeper, says he was. Besides, Neill says he only casually examined it, and expressed no opinion as to its verity, and treated it merely as advisory of the extent of the business done by plaintiffs for the benefit of himself and associate. Nor does the letter of August 14, 1906, justify the conclusion, urged by counsel for plaintiffs, that Gilfillan and Neill dealt with the account as one stated. On the contrary, the letter purports to challenge its correctness. The letter says: "In regard to what you say about the balance due on settlement, we do not make note to cover this for the reason that Mr. Stouck has gotten the account so mixed up we can not at present tell what the balance is. We will, however, try to get this straightened out soon and will then make settlement. The writer may arrange to see you with reference to this matter soon". It is manifest that at that time there had been no final adjustment of the transactions between the parties growing out of the conduct of the business since the first day of February. For aught appearing

to the contrary, Neill contemplated a settlement of all matters of account arising out of operations conducted by plaintiffs as the representatives of the purchasers in the interval between February 1 and April 10.

But an account stated by the parties is not generally conclusive. It may be impeached and corrected, for fraud, mistake or error in the items composing it or the balance ascertained. While the agreement of the parties operates as an admission that the account is correct, it does not create an estoppel and so preclude the right to inquire further into its merits, unless the position of the other party has thereby been altered to his prejudice. 1 Rul. Cas. 217; *McNeel* v. *Baker,* 6 W. Va. 153; *Camp* v. *Wilson,* 97 Va. 265, 274.

However, all the accounts growing out of the transactions involved in this litigation were submitted to the commissioner under the order of reference, without limitation or restriction; and as, on such submission and reference, he has re-stated all of them, including the March 20th statement, his report must be deemed and treated as prima facie correct; and on plaintiffs devolved the duty and burden of showing with particularity the respect in which the re-stated account is incorrect, unfair or unjust. For, before a judgment based on an account stated by a commissioner under a reference in an action at law pursuant to §10, ch. 129, Code, can be reversed on writ of error, it must appear that the judgment is without evidentiary support, or is palpably against the decided weight and preponderance of the evidence. *Kinsey* v. *Carr,* 60 W. Va. 449, 451, and cases cited.

For the most part, plaintiffs complain of the exclusions or deductions made by the commissioner from the March 20th account. But, upon an examination of the evidence relating to these charges, we have reached the conclusion that such alterations properly were made. Many of the items changed were for materials, merchandise and supplies purchased by plaintiffs at different times anterior to February 1, 1906, and, if a part of the party at that time, they were covered by the consideration paid by defendant and Gilfillan. The item of $477.63, balance in bank on March 20, 1906, entered into the balance due on that account April 10, and hence was twice charged to defendant. The plaintiffs also charged defend-

ant with an account against S. E. Slaymaker & Co., amounting to $1682.16, out of which defendant realized only $475.43, due to reduction by freight charges and commissions. Though the evidence as to this item does not definitely show the date of the shipments and the freight charges thereon, the reduction has been approved by the court, and must be treated as correct on this review in the absence of proof to the contrary. These instances we cite only as illustrations of the various erroneous charges justly eliminated, as seems to us, either as items of debits or credits from the account claimed by plaintiffs in this action. To cite each one of the many items of the accounts and detail the reasons for non-allowance would unduly prolong this opinion and serve no useful purpose. It suffices to say generally that, instead of being insufficient to show meritorious cause for the changes and alterations made by the commissioner in the March account, and for his statement of all the accounts arising out of the transactions between the parties, and the judgment based on his report, the evidence, as we view it, tends strongly to show ample justification for such report and for the judgment thereon rendered.

Plaintiffs further contest the right of Neill in this action to use as a set-off against their claims the indebtedness, if any, due from them to Gilfillan, Neill & Co., a corporation to which the property sold subsequently was conveyed by the purchasers. But by its deed the corporation assigned such indebtedness as existed in its favor against plaintiffs, arising out of the contract of purchase, and authorized him to file and prove any such claims as off-sets or counter claims against the demands stated in plaintiffs'. declaration and bill of particulars, and provided therein that if such indebtedness were filed as an off-set or counter claim and considered as a part of the matters in litigation, the corporation should thereby be precluded from the prosecution of any action based thereon. This deed seems to have been filed with the commissioner and by him returned as an exhibit with the depositions taken upon the hearing, and considered by the court upon the trial, without objection or exception, and without bringing it to our attention in any manner, except by their exception number eight taken and filed to the commissioner's report, to the effect that Neill is not entitled to the benefit thereof as an off-set

because if at the time this suit was instituted there was any balance due from plaintiffs it was payable to the corporation, and therefore not to Neill individually. The only question raised by the exception obviously relates not to the authority of the corporation to make the assignment, but the fact that it was made *pendente lite.* But ''in an action for a debt any payment or set-off which is so described in his plea or in his account filed therewith as to give notice of its nature, but not otherwise''. §4, ch. 126, Code. This statute has been construed to admit as off-sets, when properly filed, pleaded and proved, any account acquired before the trial, whether its acquisition be before or subsequent to the commencement of the action. *Railway Co.* v. *Cochran,* 68 Fed. 141. Indeed, its language plainly comprehends and recognizes only the necessity of ownership of the account filed prior to or at the time of trial. Such has been the recognized practice in Virginia. 4 Min. Inst. 789-90; 5 Rob. Prac. 1000. As early as 1817, it was there held that the defendant had the right to discount plaintiff's claim at the trial by off-sets, whensoever they may have been acquired, if not barred by limitation. *Ritchie* v. *Moore,* 5 Munf. 395; *Allen* v. *Hart,* 18 Gratt. 722, 729. In *Trimyer* v. *Pollard,* 5 Gratt. 460, Judge Daniel at page 462 says: ''By our statute of discounts and set-offs it is enacted that when any suit be commenced and prosecuted in any court within this commonwealth for any debt due by judgment, bond, bill or otherwise, the defendant shall have liberty upon the trial thereof to make all the discount he can against such debt, and upon proof thereof the same shall be allowed in court''; and, further, ''under this law the uniform practice is to allow discounts up to the time of trial. * * * This admission of off-sets which have accrued or been acquired since the commencement of the suit under our law, and their exclusion under the English law, constitute the main feature of difference in systems in respect to this subject''. Hence, we think plaintiff's contention in this particular, though plausible, is without substantial merit.

Though apparently stating a general proposition applicable alike to all off-sets and counter claims, the third point of the syllabus in *Dickey* v. *Smith,* 42 W. Va. 855, saying ''a defendant is entitled to set-off a bona fide claim assigned to him at

any time before commencement of suit'', is not in conflict with the holding in this case. In the former the court construed §52, ch. 50, Code, which expressly provides that the set-off must have belonged to the defendant at the time plaintiff's suit was commenced. However, §4, ch. 126, contains no such restrictions or limitations. Moreover, it authorizes judgment in favor of defendant, if upon an ascertainment of the true state of the indebtedness between the parties a balance remains due him.

Defendant, on cross-assignment, complains of the refusal of the trial court to allow interest on the amount due him, as ascertained by the commissioner, from April 10, 1906, to the date of the judgment, and not merely from the date of the report. The correctness of many of the items of these accounts was in dispute, and, until definitely ascertained, neither of the parties knew which was indebted to the other. Generally, where concurrent accounts are unliquidated, the rule is not to allow interest except from the date of settlement. *Waggoner* v. *Gray*, 2 H. & M. 603; *McConnico* v. *Curzen*, 2 Call 358; *Stearns* v. *Mason*, 24 Gratt. 484. Nor where the claim, though just, is doubtful or uncertain. *Auditor* v. *Dugger*, 3 Leigh 241.

For the reasons stated, the judgment will be affirmed.

*Affirmed.*